**UNITED STATES of America ex rel. Melvin Lee SMITH, Petitioner-Appellee,**

v.

**Charles J. ROWE and William Klusak, Respondents-Appellants.**

**No. 79–2107.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 13, 1980.

Decided March 21, 1980.

Carolyn B. Notkoff, Asst. Atty. Gen., Chicago, Ill., for respondents-appellants.

Ralph Ruebner, Deputy Appellate Defender of Office State Appellate Defender, Andrew Berman and Michael Mulder (of counsel) Chicago, Ill., for petitioner-appellee.

Before FAIRCHILD, Chief Judge, and SWYGERT and CUMMINGS, Circuit Judges.

PER CURIAM.

The primary issue is whether a prosecutor's comments about a defendant's failure to inform law enforcement authorities of his alibi defense violated his constitutional privilege against self-incrimination and his right to due process. Additional issues are: (1) whether the trial court was correct in finding that the prosecutor's summation to the jury referred to the defendant's pretrial failure to bring forth his alibi defense and (2) whether the harmless error doctrine neutralizes the constitutional impairment if it existed.

Petitioner-appellee Melvin Lee Smith requested the district court, under 28 U.S.C. § 2254, to issue a writ of habeas corpus, alleging that his state court conviction for robbery was void on constitutional grounds. The district court vacated the judgment of conviction, but it withheld the issuance of the writ for a period of 120 days so as to afford the State of Illinois an opportunity to initiate a new trial proceeding. This appeal by the respondents, Charles J. Rowe, Director, Illinois Department of Correc-

tions, and William Klusak, Sheriff, Kane County, Illinois, followed.*

Petitioner was indicted in June 1974 by a Kane County grand jury for the armed robbery on March 26, 1974 of Claudia Watson, the night auditor of the Hilton Hotel in Aurora, Illinois. He was found guilty by a jury and was sentenced to a term of four years imprisonment. At the trial, defense witness Betty Walls, who was living with petitioner at the time of the robbery, testified that she and the petitioner were home that evening playing cards. During cross-examination the witness testified that a police officer came to her residence the evening before petitioner's trial on September 30, 1974, but she refused to talk to the officer. The petitioner was also present, according to her testimony. Petitioner, testifying in his own behalf, stated that he and Walls were home on the night of the robbery. He also testified that when the police officer came to interview Walls on the eve of the trial, he told the officer that he could talk to Walls only in the presence of petitioner's lawyer.

During the State's closing and rebuttal arguments, the prosecutor made comments which are the basis of the instant habeas petition (see n. 1 of the district court's memorandum opinion which is appended).

Judge Will wrote a thorough opinion explicating his determinations. After considering the respective contentions of the parties, we are satisfied with the judge's reasoning and the result he reached. We therefore adopt his opinion as our own (see Appendix) with these additional comments.

Although *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), concerned a situation different from that presented here, it has an important bearing on the primary question before us. In *Doyle* the prosecution sought to impeach the defend-

ant's testimony by questioning the defendant about his failure to reveal exculpatory conduct on his part to narcotics agents at the time of his arrest and after receiving *Miranda* warnings. Here there were no *Miranda* warnings given to petitioner when the police attempted to interview Walls on the eve of the trial. At that time, both she and the petitioner remained silent except for the latter's statement that Walls would afford an interview if petitioner's lawyer was present.

█ It seems clear that the Supreme Court in *Doyle* left open the very question presented in the instant case. *Doyle, supra,* 426 U.S. at 616 n. 6, 96 S.Ct. at 2244 n. 6. The State argues that given this posture, *Raffel v. United States*, 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054 (1926), should control and that the prosecutor's remarks do not constitute error. We are convinced, however, that *Raffel* is factually and legally distinguishable from the present case. In *Raffel* there were two trials; here there was only one trial. Defendant Raffel made his decision to remain silent in a trial setting. In his second trial, he denied making the exact statement offered at the first trial. Here Melvin Lee Smith exercised his constitutional right to remain silent prior to his one and only trial. Moreover, we believe absent an alibi statute that passes constitutional muster, *Wardius v. Oregon*, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973), there was no obligation on Smith or Walls to inform the police or the prosecution of the alibi. In such circumstances, it was impermissible for the prosecutor to argue that their pretrial silence discredited their story told on the witness stand. Due process proscribes such prosecutorial conduct.

What we have just stated serves as a predicate for the constitutional error assert-

---

* The date of the judgment of conviction was January 30, 1975. The Illinois Appellate Court, Second Division, affirmed the conviction on September 16, 1977, *People v. Smith*, 52 Ill. App.3d 583, 10 Ill.Dec. 303, 367 N.E.2d 756 (1977), and the Illinois Supreme Court, on January 26, 1978, denied a petition for leave to appeal to that court. The Supreme Court de-

nied certiorari on May 1, 1978, *Smith v. Illinois*, 436 U.S. 961, 98 S.Ct. 3079, 57 L.Ed.2d 1127 (1978). Thereafter this habeas proceeding was initiated. The petitioner was freed on bail during the pendency of the state court appeals and is presently free on bail pending the disposition of this proceeding.

ed by petitioner: the comments of the prosecutor on the failure of the petitioner to furnish his alibi defense to the police at any time before his trial. We see no legal distinction between the comments by the prosecutor to the jury and any attempt he might have undertaken to impeach petitioner or Walls on cross-examination. *Cf. Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *Doyle v. Ohio*, supra, 426 U.S. at 633–36, 96 S.Ct. 2240, 2251–53, 49 L.Ed.2d 91 (1975) (Stevens, J., *dissenting*).

In respect to the other issues, we are convinced that Judge Will was correct in his determinations.

The order granting the writ is affirmed.

## APPENDIX

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA ex rel. MELVIN LEE SMITH,

*Petitioner,*

v.

CHARLES J. ROWE, Director, Illinois Department of Corrections, and WILLIAM KLUSAK, Sheriff, Kane County, Illinois.

*Respondents.*

No. 78 C 2853

## MEMORANDUM OPINION

WILL, District Judge.

Petitioner Melvin Lee Smith brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the ground that the state court prosecutor committed constitutional error in his closing argument to the jury and that such error was not harmless beyond a reasonable doubt. Specifically, petitioner contends that the prosecutor commented upon petitioner's failure to come forward prior to trial with the alibi to which petitioner testified at trial, and that such comment constituted impermissible

impeachment by use of post-arrest silence in contravention of *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).

This case comes before the Court on respondent's motion to dismiss and petitioner's motion for summary judgment. While this is a close case insofar as the existence of constitutional error is concerned, for the reasons hereinafter stated we grant petitioner's motion for summary judgment and grant the writ.

## BACKGROUND

Petitioner was tried in the Circuit Court of Kane County on September 30 and October 1, 1974 on the charge of having committed an armed robbery at the Hilton Inn in North Aurora, Illinois on March 26, 1974. At trial, petitioner advanced an alibi defense and both he and his girl friend, Ms. Betty Walls, testified that they had been home together on the night of the robbery. After the close of the evidence, the prosecutor made the following statements in his initial closing argument:

The defense is alibi. Now, this is a very interesting alibi. I want you all to think what you would do in a situation like this, what you would do, and if you feel that this alibi was handled the way you would handle it I will be surprised.

\*　　\*　　\*　　\*　　\*　　\*

In fact, yesterday when we attempted to talk to her [Ms. Walls] about an alibi she wouldn't talk to us, she wouldn't talk to the police officer. Melvin Smith, the same guy that wasn't at the hearing, that hid in the back, maybe, told her not to. If you had what this is supposed to be, an ironclad alibi, you were home with your spouse, or your friend, or your buddy, or girl friend or boy friend and you knew it, one week from the day that the thing happened, had happened on a late Monday, early Tuesday, and you knew on Monday or Sunday next that he was supposed to, wouldn't you run to the police and say: 'Hey, look, he was with me, he didn't do it.'

Which one of you would not? They didn't. They had no obligation to. By

the way, they have no obligation to tell us anything, but wouldn't you, if you were innocent and if you had a loved one in trouble, run in and tell the police? You're right, you would.

Trial Transcript (T.Tr.), at 248–250. Following defense counsel's closing argument, the prosecutor made the following comments in his rebuttal argument with respect to the alibi defense:

And even when the police were out there to ask her about it she wouldn't talk—or he wouldn't let her talk about it. That's a curious thing. Why, why wouldn't anybody talk about the alibi until we get to Court?

T.Tr., at 264. The jury found petitioner guilty of armed robbery.

Subsequent to petitioner's conviction, petitioner retained different counsel for the purpose of filing post-trial motions. Post-trial motions were heard by the trial judge on January 30, 1975. During the hearing, petitioner's new counsel raised for the first time his objection to the prosecutor's closing arguments insofar as the comments upon petitioner's prior silence were concerned. Hearing Transcript (H.Tr.), at 18–26, 66–68, 71–72. The trial judge concluded, however, that the prosecutor's closing argument had not violated the petitioner's right to remain silent. H.Tr., at 86–87. Petitioner was sentenced to four years and one day imprisonment.

Petitioner appealed his conviction to the Appellate Court of Illinois, Second Judicial District. *People v. Smith*, 52 Ill.App.3d 583, 10 Ill.Dec. 303, 367 N.E.2d 756 (2d Dist. 1977). One of the issues raised on appeal was whether petitioner's · constitutional privilege against self-incrimination had been violated by the prosecutor's closing arguments to the jury. Rejecting petitioner's reliance upon *Doyle v. Ohio, supra*, the appellate court concluded that

[a]n unbiased reading of the entire record clearly reveals that the prosecutor was referring to the defendant's undisputed ordering of the witness to refuse to talk to the prosecutor's representative and not of any failure or refusal of the defendant himself to speak.

52 Ill.App.3d at 591, 10 Ill.Dec. at 309, 367 N.E.2d at 762. The Illinois Supreme Court denied leave to appeal, and the United States Supreme Court denied certiorari. *Smith v. Illinois*, 436 U.S. 961, 98 S.Ct. 3079, 57 L.Ed.2d 1127 (1978). This habeas corpus petition followed.

## VIOLATION OF PETITIONER'S DUE PROCESS RIGHTS

Petitioner contends that the prosecutor's comments in closing argument impermissibly referred to petitioner's pretrial silence and thereby violated both his fifth amendment right to remain silent and his due process rights. In the context of this case, petitioner's argument raises two important questions: (1) were the prosecutor's comments directed towards *petitioner's* failure to come forward with the alibi defense, and (2), if so, does the prosecutorial comment on the petitioner's failure to come forward constitute constitutional error?

Insofar as the first of these questions is concerned, a fair reading of the trial transcript and the closing arguments by both the prosecutor and petitioner's trial counsel indicates that the primary focus of the prosecutor's comments insofar as petitioner's alibi defense was concerned was toward Ms. Walls' failure to give a similar story to the police *at any point* prior to trial.[1] In so

---

1. Since these comments can only be interpreted within the context of the full closing arguments as to the alibi defense issue, these portions of the arguments are set forth.

Initial closing argument for the prosecution:

The defense is alibi. Now, this is a very interesting alibi. I want you all to think what you would do in a situation like this, what you would do, and if you feel that this alibi was handled the way you would handle it I will be surprised.

Okay. They say that here is Melvin Smith living with Betty, that they have been living together for awhile, that he stays home on a regular basis, that he's not working and she's not working, so they must be getting along pretty good if you're going to stay in because it's. pretty tough to stay in the house day in and out. They have enough feeling for one another. They live together, play cards together, stay together even though they're not married.

Okay. That when she finds out that he is arrested for this offense, the day she found out she claims it was Sunday, he says it was Monday, she's a little mixed up on her days,

arguing, the prosecutor clearly sought to impeach Ms. Walls' veracity as a witness in support of petitioner's alibi defense.[2] Notwithstanding the prosecutor's primary focus upon impeaching Ms. Walls' testimony, it is clear that on several separate occasions during his closing arguments, one of which was of significant duration, the prosecutor's language literally embraced both petitioner and Ms. Walls.

The Illinois Appellate Court concluded with respect to these comments that "the prosecutor was referring to the defendant's undisputed ordering of the witness to refuse to talk to the prosecutor's representative." *People v. Smith, supra,* 52 Ill. App.3d at 591, 10 Ill.Dec. at 309, 367 N.E.2d at 762. Presumably, this conclusion was drawn from the prosecutor's cross-examination of Ms. Walls, T.Tr., at 224–227, and petitioner's trial testimony that when the

but when she found out she didn't turn to the police and say: 'For Godsake, he couldn't have done it, he was with me.' No, this alibi couldn't come out right then and there.

In fact, yesterday when we attempted to talk to her about an alibi she wouldn't talk to us, she wouldn't talk to the police officer. Melvin Smith, the same guy that wasn't at the hearing, that hid in the back, maybe, told her not to. If you had what this is supposed to be, an ironclad alibi, you were home with your spouse, or your friend, or your buddy, or girl friend or boy friend and you knew it, one week from the day that the thing happened, had happened on a late Monday, early Tuesday, and you knew on Monday or Sunday next that he was supposed to, wouldn't you run to the police and say: 'Hey, look, he was with me, he didn't do it.'

Which one of you would not? They didn't. They had no obligation to. By the way, they have no obligation to tell us anything, but wouldn't you, if you were innocent and if you had a loved one in trouble, run in and tell the police? You're right, you would.
T.Tr., at 248–250.

Closing argument for the defense:

So, coupled with that we have got what Mr. Puklin refers to as the alibi defense, and legally that's what it's called is an alibi defense. Now, alibi has a bad connotation, or at least to me it sounds bad, alibi, but that's what it's called.

And sure, when I was picking you people on the jury, when Mr. Puklin was picking you I asked you questions now about what if we don't put on any evidence, what if Melvin doesn't testify, and that's because that's a very difficult choice for me to make. I put this girl on the stand, she's never been in Court before, she's not an experienced witness by any means. I don't know what Mr. Puklin is going to be able to do to her, what a skillful cross examiner is going to get her to say.

I submit to you that had Mr. Puklin enough time or the desire to do so he could have had her confused about her name. But we do have her here saying: 'I was living with Melvin, we were staying together, he was home that night.' We have Melvin saying he was home that night. Mr. Puklin says: 'Okay,

why didn't you tell the police? You would have all told the police.' I have no doubt in my mind that every one of you would have gone to the police and said: 'Hey, you get him out, he didn't do it, he was with me.'

Well, just for a minute pretend that you're in your early twenty's, and you're black, and you're living in Aurora and you have a boy friend charged with armed robbery and you know he was with you. Are you going to the police and say: 'Hey, that's my boy friend, he was with me, you guys are wrong?' Of course you're not. It's unfortunate, but if you're black and you're that age and you're in Aurora the police are on the other side, they're not on your side, so you don't run to the police and tell them your story, probably would rather stay out of the whole thing.
T.Tr., at 256–57.

Rebuttal closing argument for the prosecution:

Okay. Doubt has to be a reasonable one. I think what you saw here was a man who has been identified, who has been captured and a loved one doing whatever she can to get him out of this. I believe they have both lied under oath. I don't believe the doubt they have tried to create is a reasonable doubt in light of what you would do if you had an ironclad alibi for a loved one.

And, you know, I don't go this bit about she being twenty years old, and black, and on Aid in Aurora and the police hate people that are black. I don't care what color you are, if you got an ironclad alibi it doesn't hurt to walk downtown and tell the police, they're not going to do anything to you.

And even when the police were out there to ask her about it she wouldn't talk—or he wouldn't let her talk about it. That's a curious thing. Why, why wouldn't anybody talk about the alibi until we get to Court?
T.Tr., at 263–64.

---

2. Petitioner does not here challenge the constitutionality of the impeachment of a defense witness by that witness' prior silence, nor do we perceive any constitutional defect in such prosecutorial comment in this case. *See United States v. Zouras,* 497 F.2d 1115, 1120 (7th Cir. 1974); *Shadd v. United States,* 423 F.Supp. 511, 514 (W.D.Pa.1976).

police officer had come to interview Ms. Walls on the day before the trial began, petitioner had instructed the officer that Ms. Walls would only talk to the officer in the presence of petitioner's attorney. T.Tr., at 236.

 While the appellate court's interpretation of the prosecutor's comments has some support in the record, we do not find the appellate court's analysis persuasive. 28 U.S.C. § 2254(d)(8). In his comments preceding his repeated references to "they", T.Tr., at 250, the prosecutor had discussed broadly Ms. Walls' failure to come forward at any time prior to the trial, as well as discussing Ms. Walls' failure to come forward on the day prior to her actual testimony. In addition, he also referred to "if you were innocent", T.Tr., at 250, and "Why, why wouldn't anybody talk about the alibi until we get to Court?" T.Tr., at 264 (underscoring supplied). Viewing the prosecutor's comments as a whole, they are clearly susceptible of being interpreted as referring to both petitioner and Ms. Walls' failures to come forward any any time before trial.

Notwithstanding our conclusion that the prosecutor's literal language also embraced the defendant's pretrial silence, the question remains whether these comments are, for purposes of constitutional analysis, to be deemed a reference to the defendant's prior silence. Neither the Supreme Court nor the Seventh Circuit has yet specifically set forth a test to determine when ambiguous prosecutorial comments will constitute an invasion of the defendant's right to remain silent after his arrest. However, at least one circuit has ruled with respect to *Doyle* -type situations that a comment is deemed to be such a reference if either (1) it was the prosecutor's manifest intention to refer to the defendant's silence, or (2) the remark was of such a character that the jury would "naturally and necessarily" take it to be a comment on the defendant's silence. *United States v. Edwards*, 576 F.2d 1152, 1154 (5th Cir. 1978). This standard is identical to that followed by the Seventh Circuit in

cases where the issue is whether indirect prosecutorial statements constitute impermissible comment upon the defendant's failure to testify at trial, *United States v. Muscarella*, 585 F.2d 242, 249 (7th Cir. 1978); *United States v. Buege*, 578 F.2d 187, 188 (7th Cir. 1978); *United States v. Lyon*, 397 F.2d 505, 509 (7th Cir. 1968), and we see no reason why the same standard should not be equally applicable here.

Evaluating the challenged comments by reference to this standard, we cannot conclude that they were "manifestly intended" to refer to petitioner's silence. There are indications that the prosecutor's choice of words was not accidental and might well have been intentional, particularly in his repeated use of the word "they." T.Tr., at 250. However, in light of the dominant focus of the closing arguments on the impeachment of Ms. Walls and of the fact that the prosecutor did not cross-examine petitioner with respect to his failure to come forward at any time prior to trial, we cannot conclude that he "manifestly intended" to include petitioner in his remarks. Notwithstanding this conclusion, we find the prosecutor's remarks to be of such a character that the jury would "naturally and necessarily" take them to be a comment on the defendant's silence. Repetition of the word "they", in contrast to the immediately prior comments which were focused only upon Ms. Walls' silence, is juxtaposed so as to call the jury's attention to the petitioner's as well as Ms. Walls' silence. Moreover, while the reference to "anybody" in the rebuttal argument is of lesser importance and of itself would be inadequate to justify a finding of improper comment, *see United States v. Aldridge*, 484 F.2d 655, 660 (7th Cir. 1973) (single ambiguous comment held not to warrant reversal), the implicit reference of this word to both Ms. Walls and petitioner and the arguable reference of this clause to their joint silence up until trial reinforced the comment upon petitioner's silence contained in the preceding comments.

 This is a close case. Moreover, we recognize that defense counsel's failure to

object at the time of the prosecutor's closing argument is a factor to be weighed in deciding whether or not the prosecutor's remarks are to be considered as improper comments. *See United States v. Hansen*, 583 F.2d 325, 331 (7th Cir. 1978); *United States v. Reicin*, 497 F.2d 563, 573 (7th Cir. 1974); *United States v. Lyon, supra*, 397 F.2d at 509.[3] Nonetheless, we find that these closing arguments would naturally and necessarily be taken by the jury as a comment on the defendant's failure to come forward prior to trial with notice of his alibi defense.

Having concluded that the prosecutor's comments were directed towards the petitioner's failure to come forward at any time prior to trial with his alibi defense, the question remains whether these comments constitute constitutional error. Petitioner relies primarily on *Doyle v. Ohio, supra;* and *United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975) in support of his contention that these comments were constitutional error. However, a careful reading of these decisions shows that, while important to analyzing whether or not the prosecutor's comments in this case constituted constitutional error, neither controls this case.

In *Hale*, the Supreme Court, exercising its supervisory powers over the lower federal courts, held on non-constitutional grounds that a defendant's silence at the time of arrest and during police interrogation lacked significant probative value and that "any reference to silence under such circumstances carried with it an intolerably prejudicial impact." 422 U.S. at 180, 95 S.Ct. at 2138. In *Doyle*, the Supreme Court extended the *Hale* rationale, and held that use of a defendant's silence at the time of arrest and after having received *Miranda*

warnings to impeach the defendant's exculpatory story given for the first time at trial violated due process. In so holding, the Court adduced two reasons in support of its constitutional rule. First, as set forth in *Hale*, the ambiguity of post-arrest, post-*Miranda* warning silence was so great as to deprive the silence of significant probative value. 426 U.S. at 617, 96 S.Ct. at 2244. Second, since the *Miranda* warnings themselves implicitly assured the defendant that his silence would not be used against him, it would be fundamentally unfair to later allow use of the silence to impeach an exculpatory explanation. 426 U.S. at 618, 96 S.Ct. at 2245.

While *Doyle* established a constitutional rule based on the due process clause against impeachment use of a defendant's silence while under arrest and after having received *Miranda* warnings, the Court was careful to specify that it did not consider other constitutional claims raised by the petitioners. 426 U.S. at 616 n.6, 96 S.Ct. at 2244 n.6. The Court specifically noted that it did not reach petitioners' claim, essentially identical to that raised here by petitioner Smith, that constitutional error had been committed by the prosecutor's cross-examination and comment in closing argument directed towards the petitioners' failure to have told their exculpatory story at any time prior to trial. *Id.* Moreover, the Court noted that "different considerations" would be involved in such a case. *Id.*

To this Court's knowledge, no federal court has endeavored since *Doyle* to analyze the "different considerations" which are at play when the prosecutorial comment is directed towards the defendant's general failure to come forward and give notice of his alibi prior to trial.[4] Some guidance as to

---

**3.** In addition to failing to object to these comments on the petitioner's pretrial silence, petitioner's trial counsel failed to object to two other prosecutorial comments during closing argument which comments were found by the Illinois Appellate Court to have been error. *See People v. Smith, supra*, 52 Ill.App.3d at 589–90, 10 Ill.Dec. at 309–10, 367 N.E.2d at 760–61. Under such circumstances, we are re-

luctant to give counsel's failure to object significant weight.

**4.** Several federal courts have explicitly noted that the Supreme Court reserved decision in *Doyle* upon whether the defendant's general silence in failing to come forward prior to trial with a story told at trial can be used for impeachment purposes. *United States v. Mireles*, 570 F.2d 1287, 1292 n.8 (5th Cir. 1978);

the constitutional considerations at play in this situation may be gleaned, however, from the dissenting opinion in *Doyle*.

Justices Stevens, Blackmun, and Rehnquist, dissenting in *Doyle*, would have reached the constitutional issue reserved by the majority and at stake in this case and would have resolved this issue adversely to the petitioners. Relying primarily on the continued existence of *Raffel v. United States*, 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054 (1926), in which the Court had held that a defendant's failure to take the stand at his first trial could be used to impeach the defendant on cross-examination when the defendant took the stand in his second trial, these justices would have concluded that, until *Raffel* is expressly overruled, a state court is free to "regard the defendant's decision to take the stand as a waiver of his objection to the use of his . . . failure to offer his version of the events prior to trial." 426 U.S. at 633, 96 S.Ct. at 2251, 2252 (Stevens, J., dissenting). Notwithstanding this conclusion, the dissenting justices expressed serious doubts as to the probative value of a defendant's decision not to divulge his defenses prior to trial. *Id.*, at 631–632, 96 S.Ct. at 2250–2251.

While the dissenting opinion in *Doyle* points toward a finding of no constitutional error in this case, we conclude that the "different considerations" present in this case do not prevent the error from attaining constitutional proportions. In fact, considerations precisely parallel to the two rationales articulated by the *Doyle* majority are present in this case. First, as a general

matter, a defendant's failure to come forward prior to trial with an alibi defense is certainly no less "insolubly ambiguous" than is the defendant's silence at the time of arrest. Where the defendant has been given *Miranda* warnings and been thereby apprised of the fact that his statements could be used against him, where the defendant retains his fifth amendment privilege against self-incrimination, and where the defendant has counsel who might well have encouraged him to say nothing to the prosecution with respect to his possible defenses, the defendant's failure in the usual case to come forward with an alibi defense is certainly not significantly inconsistent with his testimony as to the alibi defense at trial. Moreover, while the record in this case is sparse since the prosecutor never cross-examined petitioner with respect to his failure to give the alibi defense before the trial, the record clearly demonstrates that petitioner's trial counsel had deliberately withheld giving the prosecutor notice of the petitioner's alibi defense.[5] Under such circumstances, petitioner's pretrial failure to come forward with his alibi defense is of extremely questionable probative value, while its potential for prejudice can hardly be doubted.

Second, even assuming the continuing viability of the *Raffel* decision,[6] the prosecutorial comments directed towards the petitioner's failure to come forward prior to trial with his alibi violated fundamental fairness. While this case is distinguishable from *Doyle* in that the silence addressed by

---

*Hayton v. Egeler*, 555 F.2d 599, 602 (6th Cir. 1977). *Cf. Pineda v. State of Florida*, 564 F.2d 1163, 1165 (5th Cir. 1977) (need not decide whether *Doyle* should be extended to silence at a preliminary hearing).

At least one state court, relying on the reserved issues in *Doyle*, has concluded on the authority of *Raffel v. United States*, 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054 (1926), that a defendant's silence at a preliminary hearing can be used to impeach his testimony at trial. *Franklin v. State*, No. 57,348 (Tex.Crim.App. May 24, 1978) (en banc). This decision was reached over a vigorous dissent, and has been criticized. 10 St. Mary's L.J. 632 (1979).

**5.** *See* T.Tr., at 3–22.

**6.** The *Raffel* decision has clearly been substantially circumscribed insofar as it is applicable in federal courts. *See United States v. Hale, supra; Stewart v. United States*, 366 U.S. 1, 81 S.Ct. 941, 6 L.Ed.2d 84 (1961); *Grunewald v. United States*, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957). The Supreme Court in *Hale* specifically noted that since its decision was reached on nonconstitutional grounds, there was no need to decide whether *Raffel* was viable constitutional law. 422 U.S. at 175 n.4, 95 S.Ct. at 2136 n.4. Under such circumstances, the continued viability of *Raffel* is clearly questionable. *United States v. Vega*, 589 F.2d 1147, 1152 n.3 (2d Cir. 1978).

the comment was not solely that during the post-*Miranda* warning, post-arrest period, the fact that *Miranda* warnings are given and that a criminal defendant retains his fifth amendment right against self-incrimination is of continuing relevance to the fact of a defendant's silence throughout the pre-trial period. Moreover, in this specific case, the record clearly demonstrates that petitioner's trial counsel deliberately withheld giving notice of the alibi defense and the identity of the alibi witness until the day of trial. In making this deliberate choice, the petitioner's counsel relied on his conclusion that under *Wardius v. Oregon*, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973), the Illinois Alibi Defense statute, Ill.Rev.Stat. ch. 38, § 114–14, was unconstitutional in its failure to provide reciprocal discovery by the defendant once the defendant had provided notice of his alibi.[7] Under such circumstances, we believe it was fundamentally unfair and a denial of due process for petitioner's silence to be used to attack his alibi offered at trial. *See Minor v. Black*, 527 F.2d 1, 3–4 (6th Cir. 1975); *United States v. Brinson*, 411 F.2d 1057, 1060 (6th Cir. 1969). *Cf. United States v. Franklin*, 586 F.2d 560, 570 (5th Cir. 1978) (questions directed towards revealing a defendant's general pre-trial silence are improper); *United States v. Meneses-Davila*, 580 F.2d 888, 891 (5th Cir. 1978) (without consideration of "different considerations," held prosecutorial inquiry as to defendant's general pretrial silence as to exculpatory story given at trial to be a "blatant" violation of *Doyle* ).

Accordingly, we hold the prosecutor's comments in closing argument which called the jury's attention to petitioner's pretrial silence with respect to his alibi to be constitutional error.

## HARMLESS ERROR

Notwithstanding our conclusion that the prosecutor's comments were constitutional error, respondent contends that such error was harmless beyond a reasonable doubt as

required by *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). In light of the evidence presented at trial, we cannot agree.

The evidence presented at petitioner's state court trial, while clearly sufficient to sustain the jury verdict of guilty, *see People v. Smith, supra*, 52 Ill.App.3d at 588, 10 Ill.Dec. at 308, 367 N.E.2d at 760, was not exceedingly strong. The prosecution's only substantive witness was the robbery victim who testified that she had viewed the defendant during the course of the robbery for two or three minutes. While the lighting was good, the victim testified that the robber had been wearing a wide brimmed hat which cast shadows over a portion of his face. Moreover, the victim originally described the robber as 5′8″ tall, while in fact petitioner is 6′2″. Five days after the robbery, the victim picked the petitioner's picture out from a set of 8 or 9 photographs. She again identified petitioner at a line-up of 9 or 10 men some four months later, but at this line-up all of the men were seated thereby preventing a test of the victim's recollection of the robber's height. The only other prosecution witness testified to having witnessed the line-up at which the victim identified the petitioner. In opposition to this testimony, both Ms. Walls and petitioner testified that they had been home together on the night of the robbery.

In determining whether the error was harmless beyond a reasonable doubt, the question is whether there is a reasonable possibility that the error might have contributed to the conviction. *Fahy v. Connecticut*, 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963). In a trial like petitioner's, the credibility of the witnesses and of the defendant are of crucial significance. While Ms. Walls' testimony in support of petitioner's alibi was substantially impeached at trial, we cannot conclude that the petitioner's alibi defense was transparently frivolous. Under all of the circumstances, where the jury would "naturally

---

7. *See* T.Tr., at 3–22. The argument as to the unconstitutionality was upheld in *People v. Fields*, 59 Ill.2d 516, 322 N.E.2d 33 (1975). *See*

*also United States ex rel. Hairston v. Warden*, 597 F.2d 604, 608 (7th Cir. 1979); *Allison v. Gray*, 603 F.2d 633 (7th Cir. 1979).

and necessarily" have taken the prosecutor's closing arguments as an effort to impeach petitioner's credibility and alibi defense by virtue of his pretrial silence, we cannot conclude that the error was harmless beyond a reasonable doubt.[8] *See United States ex rel. Allen v. Rowe*, 591 F.2d 391, 393 (7th Cir. 1979); *Chapman v. United States*, 547 F.2d 1240, 1249 (5th Cir. 1977). Petitioner is entitled to a new trial.[9]

Accordingly, petitioner's motion for summary judgment is granted, and the judgment of conviction is vacated. However,

**8.** Respondents have also argued that the comments were harmless beyond a reasonable doubt by virtue of certain jury instructions given by the trial judge to the jury. Specifically, respondents rely upon the instructions that the jury must find petitioner guilty beyond a reasonable doubt from the evidence presented at trial, and that the arguments of counsel were not evidence. T.Tr., at 268, 275–76.

Under some circumstances, jury instructions may have a curative effect upon prior error in referring to a defendant's silence. *See United States v. Hansen, supra*, 583 F.2d at 332. However, this rule is by no means absolute. *United States v. Buege, supra*, 578 F.2d at 189; *United States v. Edwards, supra*, 576 F.2d at 1154. The instructions relied upon here by respondent were general in nature and were not directed toward the specific issue of whether petitioner could properly be impeached by his pretrial silence. In fact, a reading of the entire jury instructions shows that at no time was this constitutional problem addressed. We therefore find no basis for concluding that the jury instructions rendered the constitutional error harmless beyond a reasonable doubt.

**9.** Since the Supreme Court's holding in *Doyle* expressly reserved judgment in a case such as this one, we need not address respondents' argument that *Doyle* should not be applied retroactively.

Assuming *arguendo* that the issue of *Doyle's* retroactivity was necessary to a decision of this case, we would find *Doyle* retroactive. While no federal decision has to this Court's knowledge yet decided the question of whether *Doyle* should be given full retroactive effect, several decisions have intimated that *Doyle* is to be considered applicable to those cases which were on appeal at the time of the *Doyle* decision. *See Chapman v. United States*, 547 F.2d 1240, 1246–47 (5th Cir. 1977); *United States v. Lenardo*, 420 F.Supp. 1148, 1157 (D.N.J.1976), *remanded without pub. op.*, 542 F.2d 1168 (3d Cir. 1976). The Seventh Circuit has recently affirmed habeas corpus relief on *Doyle* grounds for an Illinois prisoner whose conviction had been affirmed by the Illinois Appellate Court shortly before *Doyle* was decided, *United States ex rel. Allen v. Rowe, supra*, though this question was reached without discussion of the retroactivity question.

While this limited authority supports the conclusion that *Doyle* should be given retroactive effect at least to cases on direct appeal at the time of the *Doyle* decision, *see United States v. Fitzgerald*, 545 F.2d 578, 582 (7th Cir. 1976), explicit consideration of the criteria set forth by the Supreme Court in *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), supports the conclusion that *Doyle* be given retroactive effect. Insofar as the *Doyle* decision rests upon the extension of the rationale of *Hale* of ensuring that only probative evidence will be used at trial, the "purpose" of the *Doyle* rule is directed towards the reliability of the truth-finding process at trial. Such a purpose has sometimes been held a sufficient condition to infer retroactivity. *See Chapman v. United States*, 547 F.2d 1240, 1247 n.12 (5th Cir. 1977).

Respondents contend, however, that the question of *Doyle's* retroactivity should be analyzed by reference to *Tehan v. Shott*, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966), which denied full retroactive effect to *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). While it is clear that the *Griffin* decision was in part premised upon the accuracy of the truth-finding process, *see Johnson v. New Jersey*, 384 U.S. 719, 729, 86 S.Ct. 1772, 1778, 16 L.Ed.2d 882 (1966), the decision in *Tehan* to deny retroactivity was based upon the weight of the remaining factors in the *Stovall* analysis, i. e., the extent of reliance upon the old rule and the effect on the administration of justice of a retroactive application of the new rule. 388 U.S. at 297, 87 S.Ct. at 1970. Unlike the Supreme Court's findings in *Tehan* with respect to retroactive application of *Griffin*, we do not believe that either of these remaining factors presents a serious argument against retroactive application. Insofar as the respondents' reliance upon prior precedent is concerned, the *Doyle* decision appears to be the logical successor to the Court's opinion in *Miranda v. Arizona*, 384 U.S. 436, 468 n.37, 86 S.Ct. 1602, 1624 n.37, 16 L.Ed.2d 694 (1966). Insofar as "the effect upon the administration of justice" by virtue of retroactive application of *Doyle* is concerned, we have no reason to believe that there have been "countless trials" where there has been prosecutorial reference to a defendant's post-arrest silence. Illinois law prior to *Doyle* had apparently already held it to be reversible error to bring out the fact of a defendant's silence at the time of arrest. *People v. Rothe*, 358 Ill. 52, 57, 192 N.E. 777 (1934).

Accordingly, were the question of retroactivity properly before us, we would hold *Doyle* retroactive to apply to this case.

the writ of habeas corpus shall not issue for a period of 120 days in order to afford the State of Illinois the opportunity to initiate new trial proceedings. If petitioner is not brought to trial within 120 days from the date of this order, the writ shall issue.

An appropriate order will enter.

Dated: Aug. 21, 1979.