IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

Respondent,

v.

CHAD THOMAS CLARK,

Appellant.

No. 86217-1-I

DIVISION ONE

UNPUBLISHED OPINION

DÍAZ, J. — In April 2023, a jury convicted Chad Thomas Clark of two counts of violating a no-contact order protecting L.E. and of residential burglary of her home. In November 2023, at a separate trial as to a separate incident, a jury convicted Clark of assault in the second degree and felony harassment of C.W. Clark primarily claims that the State violated his Fifth Amendment right to silence and committed misconduct in his first trial. As to his second trial, he claims that Washington's harassment statute, chapter 9A.46 RCW, is unconstitutional and that the court erred by permitting the violation of discovery rules and by violating his right to be free from double jeopardy. We affirm Clark's convictions.

I.    BACKGROUND

In November 2021, C.W. told police that Clark, her long-term romantic partner, had attacked her. She claimed inter alia that he strangled her and told her

that he would kill her. The State charged Clark with assault in the second degree and felony harassment.

At trial, Clark objected to the admission of color photographs of C.W.'s injuries because the State had provided only black-and-white versions during discovery. The court overruled the objections and admitted the photographs. The jury found Clark guilty of assault in the second degree and felony harassment by making a threat to kill.

On December 6, 2021, a court entered a domestic violence no-contact order, protecting L.E. and prohibiting Clark from entering her residence. Later the same day, law enforcement arrested Clark at L.E.'s residence. The State charged Clark with violating the no-contact order and with residential burglary.

Twice during the trial, the prosecutor asked officers who were on the scene whether, at the time of the arrest, Clark disputed that there was a no-contact order. During closing arguments, his defense counsel argued that State had not proved beyond a reasonable doubt that Clark understood the no-contact order. In rebuttal, the prosecutor argued that the jury should not "consider Mr. Clark's mental health." The court overruled defense counsel's objection that the State's argument was misleading.

The jury found Clark guilty of residential burglary and of two counts of violating the no-contact order. The court sentenced Clark for both sets of convictions at the same hearing. Clark timely appeals the convictions from both trials.

## II.    ANALYSIS[1]

### A.    Comment on Right to Remain Silent

For the first time on appeal, Clark claims that the officers' testimony that he did not dispute the existence of the no-contact order was an improper comment on his Fifth Amendment right to remain silent. See U.S. CONST. amend V. Indeed, the State may not use a defendant's constitutionally permitted silence "either as substantive evidence of guilt or to suggest to the jury that the silence was an admission of guilt." State v. Romero, 113 Wn. App. 779, 787, 54 P.3d 1255 (2002) (quoting State v. Lewis, 130 Wn.2d 700, 707, 927 P.2d 235 (1996)). However, we generally may review a claim of error made for the first time on appeal only if it concerns "manifest error affecting a constitutional right." RAP 2.5(a). We address reviewability below before proceeding to the merits.

Clark has the "initial burden of showing that (1) the error was 'truly of constitutional dimension' and (2) the error was 'manifest.'" State v. Grimes, 165 Wn. App. 172, 185-86, 267 P.3d 454 (2011) (quoting State v. O'Hara, 167 Wn.2d 91, 98, 217 P.3d 756 (2009)). Constitutional questions are issues of law which we review de novo. State v. McCuistion, 174 Wn.2d 369, 387, 275 P.3d 1092 (2012).

In determining whether a comment on defendant's silence is a manifest constitutional error, we must first determine whether the comment is direct or indirect. Romero, 113 Wn. App. at 790. Where there is a direct comment on

---

[1] The parties tried the crimes out of chronological order, i.e., they tried the first incident after trying the second incident. Clark begins his appellate brief with assignments of error from the first trial, i.e., those arising out of the second incident. We address the errors in the order that Clark raised them.

silence, manifest "constitutional error exists that requires a constitutional harmless error analysis." Id. But an indirect comment "is more complicated" and requires the defendant to show that the error "rises to constitutional proportions." Id. at 790-91.

Clark first claims that the comment was a direct comment and therefore a per se manifest constitutional error. We disagree.

A direct comment occurs when "'(1) it was the prosecutor's manifest intention to refer to the defendant's silence, or (2) the remark was of such a character that the jury would 'naturally and necessarily' take it to be a comment on the defendant's silence.'" State v. Butler, 34 Wn. App. 2d 614, 626, 570 P.3d 383 (2025) (quoting United States ex rel. Smith v. Rowe, 618 F.2d 1204, 1210 (7th Cir. 1980)); see also State v. Burke, 163 Wn.2d 204, 216, 181 P.3d 1 (2008) (holding that, "if 'standing alone, [the comment] was 'so subtle and so brief that [it] did not 'naturally and necessarily' emphasize defendant's testimonial silence[,]'" the comment is not a direct comment on the right to remain silent) (some alterations in original) (quoting State v. Crane, 116 Wn.2d 315, 331, 804 P.2d 10 (1991)). For instance, an express reference to a defendant's *invocation* of their right to remain silent is a direct comment. State v. Pottorff, 138 Wn. App. 343, 346, 156 P.3d 955 (2007).

An indirect comment or "mere reference" to silence occurs when the witness comments on an action by the defendant that "could be inferred" to be an invocation. Pottorff, 138 Wn. App. at 347; Burke, 163 Wn.2d at 216. "[A]n indirect reference to the defendant's silence absent further comment from either the

4

witness or the State" is not a direct comment. Romero, 113 Wn. App. at 790. Mere reference to silence is not reversible error absent a showing of prejudice. Burke, 163 Wn.2d at 216

An officer present at Clark's arrest testified that he did not dispute the existence of a no-contact order, in the following exchange:

> [PROSECUTOR:] [A]t any point, without getting into anything Mr. Clark may have said, did he dispute the fact there was a no-contact order?
>
> [OFFICER]: I don't remember him disputing that.

The defense did not object to the question. They also did not object when the prosecutor asked the same question to the sergeant at the arrest:

> [PROSECUTOR:] Without getting into what he said, did [Clark] dispute that there was a no-contact order?
>
> [SERGEANT]: No.

It would be a constitutional error if the "'question and answer were injected into the trial for no discernable purpose other than to inform the jury that the defendant refused to talk to the police.'" Romero, 113 Wn. App. at 789 (quoting State v. Curtis, 110 Wn. App. 6, 13-14, 37 P.3d 1274 (2002)).

Here, Clark did not invoke his right to silence and neither the State's questions nor the officers' testimony mentioned that right or his exercise of that right when he was being arrested and questioned. And the State did not use the officers' answers as an admission or evidence of guilt in their closing argument. Because we cannot say it was manifestly the intention of the State to comment on that right, or that such an interpretation "naturally and necessarily" follows therefore, there was no direct comment. Butler, 34 Wn. App. 2d at 626.

On the contrary, when we review de novo the State's questions in their full context, it appears that the State had another discernable purpose for their questions: to recount for the jury the full story of his unlawful presence in a protected person's home, and to help them understand Clark's state of mind during the arrest.

When the officers gained entry to the apartment, Clark was sitting naked on the ground. An officer advised Clark that he was under arrest. They asked Clark to stand up and put clothes on, but Clark did not comply. The officers tried to talk to Clark for "approximately [] 15 to 20 minutes." The officers then rolled Clark facedown on the ground to arrest him. He was sweating and had feces smeared on him. He squirmed and put his arms underneath him. After putting Clark in handcuffs, they restrained him further because he continued to "shift his body and squirm."

The comment that Clark did not dispute the no-contact order does not suggest that he admitted guilt. In this context, the officers' statements are more naturally understood as further evidence that he was in a mental health crisis and non-compliant, i.e., not in position to dispute or accept the existence of the order. Therefore, the officers' testimony was not a direct comment.

Clark next argues that, even if the testimony was only an indirect comment, it rises to the level of a manifest constitutional error due to its inferable prejudice.

A reviewing court considers three questions when deciding whether an indirect comment "rises to constitutional proportions," subjecting the claim to our review. Romero, 113 Wn. App. at 790. Namely:

"First, could the comment reasonably be considered *purposeful*, meaning responsive to the State's questioning, *with even slight inferable prejudice to the defendant's claim of silence*? Second, could the comment reasonably be considered unresponsive to a question posed by either examiner, but in the context of the defense, the volunteered comment can reasonably be considered as either (a) given for the purpose of attempting to prejudice the defense, or (b) resulting in the unintended effect of likely prejudice to the defense? Third, was the indirect comment exploited by the State during the course of the trial, including argument, in an apparent attempt to prejudice the defense offered by the defendant?"

Id. at 790-91 (citations omitted) (emphasis added) (citing State v. Easter, 130 Wn.2d 228, 236, 922 P.2d 1285 (1996)). "Answering yes to any of these three questions means the indirect comment is an error of constitutional proportions *meriting review* using the constitutional harmless error standard, whether or not objection is first made at the trial court." Id. at 791 (emphasis added).

Clark argues that, under the first prong reviewed above—the officers' comments constituted manifest constitutional error because they were "responsive to the State's questioning" and there was a "even slight inferable prejudice to the defendant's claim of silence." Romero, 113 Wn. App. at 790. Specifically, Clark argues that, from the officers' comments, the jury would assume Clark was guilty because he did not dispute the existence of a no-contact order.

Indeed, the language of that prong is very broad. Assuming without deciding that it was an error for the court to permit this testimony, the error is harmless beyond a reasonable doubt. We review a comment on silence under the constitutional harmless error standard. Easter, 130 Wn.2d at 242. Constitutional errors are presumed harmful. State v. Fuller, 169 Wn. App. 797, 813, 282 P.3d 126 (2012). The State bears the burden of showing that this constitutional error was harmless. Easter, 130 Wn.2d at 242. "We find a constitutional error harmless

only if convinced beyond a reasonable doubt any reasonable jury would reach the same result absent the error and where the untainted evidence is so overwhelming it necessarily leads to a finding of guilt." Id. (internal citations omitted).

The untainted evidence of Clark's guilt was overwhelming. There was no dispute that on the same day the court entered a no-contact order protecting L.E. and prohibiting him from entering her residence, and no dispute that Clark was found in her residence. Thus, Clark's sheer presence in a location he was prohibited from being in was well established.

The evidence that Clark knew of the order was also well established. Clark participated in the hearing where the order was entered when he corrected his address, asked about a future hearing, and inquired about retrieving a pet from the protected residence. He also asked about the possibility of L.E. dropping the no-contact order, and said "yes, sir" to the commissioner. Eli Wainman, Clark's trial counsel, did not raise to the commissioner any concerns about Clark's understanding the order.

In closing argument, the State told the jury that Clark knew of the existence of the no-contact order and pointed to audio recording of the hearing and to the testimony of Wainman. The State did not mention the officers' testimony that Clark did not dispute the order during the arrest. The officers' comments were not central to the State's argument. Cf. Easter, 130 Wn.2d at 242-3 (holding that a comment on a defendant's silence was not harmless when the State emphasized the silence "many times in closing argument.").

Thus, this assignment of error fails, even if viewed as an indirect comment

on the evidence meriting review, because the jury convicted Clark due to the State's overwhelming untainted evidence, not because of any arguable mere reference to his silence.

B.    Prosecutorial Misconduct

Clark claims the State committed prosecutorial misconduct during its rebuttal closing argument, when it told the jury, over the defense's objection, "not to focus on anything that the defense just said" related to Clark's mental health.

Clark bears the burden of proving that the prosecutor's conduct was both improper and prejudicial.  State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011).  We review allegations of prosecutorial misconduct under an abuse of discretion standard.  State v. Azevedo, 31 Wn. App. 2d 70, 78, 547 P.3d 287 (2024).  A trial court abuses its discretion if "its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons."  State v. Lord, 161 Wn.2d 276, 283-84, 165 P.3d 1251 (2007).  Clark does not show the trial court abused its discretion in overruling his objection as to the argument's impropriety and does not establish reversible prejudice.

We assess the propriety of a prosecutor's conduct "in the context of the entire record and the circumstances at trial."  Azevedo, 31 Wn. App. 2d at 78.  In their closing argument, Clark's counsel argued that Clark was too confused to knowingly violate the no-contact order.  They pointed to Wainman's testimony that Clark "was in some sort of altered mental state," that he "would interject strings of numbers into his speech," and that it "was not clear on how much . . . of our conversation he was retaining."

In rebuttal, the prosecutor said, "there is nothing in [your jury instruction packet] that says you are going to consider Mr. Clark's mental health. So that is not something you are going to consider . . . You are not to focus on anything that the defense just said. You're to focus on the evidence."

The State is free to respond to an argument made by the defense. Thorgerson, 172 Wn.2d at 449 (citing State v. Russell, 125 Wn.2d 24, 87, 882 P.2d 747 (1994)). The prosecutor may not tell the jury to ignore evidence, but they may contend that the evidence does not support the defense's argument. Id. That is what the State did here: it expressly told the jury to "focus on the evidence" and not on what Clark's counsel said in their closing argument.

Clark next argues that the prosecutor misstated the law and that the jury would have gotten the "message . . . that the jury should disregard the evidence." But any possible misunderstanding was clarified immediately when the prosecutor next stated: "[y]ou're to focus on the evidence." The prosecutor's statements were responsive to Clark's counsel's argument, and it was not a misstatement of the law that the jury had not received a diminished capacity instruction.[2] Thus, Clark has not carried his burden to show the State's arguments were improper.

Assuming without holding that the prosecutor's statements were improper, Clark also fails to show that the prosecutor's statement resulted in prejudice that had a substantial likelihood of affecting the jury's verdict. In re Pers. Restraint of

---

[2] Clark's brief argument that his constitutional right to have counsel make a closing argument was violated is unpersuasive. Nothing in the record indicates that the *trial court* unduly limited the scope of Clark's counsel's closing argument as in State v. Frost, 160 Wn.2d 765, 773, 161 P.3d 361 (2007), on which Clark relies.

Glasmann, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). The jury instructions were clear that the jury may consider all evidence and that the lawyer's statements were not evidence. We presume that the jury followed the instructions. State v. Stein, 144 Wn.2d 236, 247, 27 P.3d 184 (2001). Any confusion resulting from the prosecutor's statements would have been resolved by the jury instructions. Clark nowhere explains why those instructions would not have resolved any prejudice from the State's comments and, thus, his claim fails.[3]

## C. Remedy for Untimely Discovery Disclosure

As to his second trial, Clark argues that the court abused its discretion when it allowed the State to present color photographs to the jury, even though the State produced only black-and-white versions during discovery. He claims that the State's failure to disclose evidence violated his constitutional right to a fair trial and the effective assistance of counsel. He asserts that the violation of his constitutional rights requires reversal of his conviction. We disagree.

### 1. Discovery Violation

The State is required to turn over photographs "within the prosecuting attorney's possession or control no later than the omnibus hearing." CrR 4.7(a)(1)(v). "[I]f [] additional material or information is discovered during trial," the State must promptly notify the other party or their counsel and the court. CrR 4.7(h)(2).

The State disclosed black-and-white photographs of the victim's injuries to

---

[3] Clark also seeks reversal of the first trial convictions under the cumulative error doctrine. As we find no error, we do not reach this issue.

the defense during discovery. The day the treating physician was to testify, he provided the State color versions of the same photographs. The State immediately notified Clark and the court. The court credited the State's claim that it did not have the photographs until that day and found the new photographs were not undue surprise.[4]

The State did not violate CrR 4.7 since they did not have the photographs until the morning of the trial. In compliance with CrR 4.7(h)(2), they notified Clark's attorney and the court when they received the color photographs. There is no violation of discovery rules.

2. Remedy

Even if the State did violate discovery rules, we review sanctions imposed or denied for discovery violations for an abuse of discretion. State v. Barry, 184 Wn. App. 790, 797, 339 P.3d 200 (2014). The court did not abuse its discretion when it provided the remedy of extra preparation time.

Clark argues that the color photographs should have been excluded entirely. "Exclusion or suppression of evidence . . . for a discovery violation is an extraordinary remedy and should be applied narrowly." State v. Vance, 184 Wn. App. 902, 911, 339 P.3d 245 (2014). Courts weigh whether to exclude evidence for a discovery violation by considering four factors: (1) the effectiveness of less

---

[4] Clark claims that the prosecutor "had actual knowledge of these photographs a month before trial started." Insofar as the record indicates any factual dispute as to earlier availability of the photographs, the trial court has discretion to credit the prosecutor's explanation of events. See Hur v. Lloyd & Williams, LLC, 25 Wn. App. 2d 644, 655, 523 P.3d 861 (2023) (holding that the court may rely on a licensed attorney's explanation of conduct without administering an oath).

severe sanctions; (2) the impact on the evidence at trial and the outcome of the case; (3) the extent to which the opposing party will be surprised or prejudiced by the evidence; and (4) whether the violation was willful or in bad faith. See State v. Venegas, 155 Wn. App. 507, 522, 228 P.3d 813 (2010) (citing State v. Hutchinson, 135 Wn.2d 863, 882-83, 959 P.2d 1061 (1998), abrogated on other grounds by State v. Jackson, 195 Wn.2d 841, 467 P.3d 97 (2020)).

Although Clark argued that the color photographs offered "a vast difference in the information" from the black-and-white versions, the court did not agree. Exclusion was not proper in this case since the court reasonably found that the introduction of color photographs was not prejudicial to Clark, extra preparation time could adequately address the violation, and there was no bad faith. Venegas, 155 Wn. App. at 522.

Instead of excluding the photographs, the trial court remedied the discovery violation by giving defense extra time that morning to interview the witness about the color photographs. Clark's trial counsel argued that the remedy was insufficient and that the difference in the color photographs was so significant that their admission meant they had been "unable to adequately prepare the defense to his case and present it to the jury from the very beginning of the case, including opening statements and cross-examination." The court overruled the objection, noting that it could not "understand the defense position that the simple use of color photographs completely changed the strategy."

Courts have significant discretion to determine the appropriate remedy when there is an untimely discovery disclosure. State v. Farnsworth, 133 Wn. App.

1, 13, 130 P.3d 389 (2006). The court should impose the "least severe sanction" that would adequately address the violation. Blair v. TA-Seattle E. No. 176, 171 Wn.2d 342, 348, 254 P.3d 797 (2011). Failure to produce evidence in a timely manner is often "appropriately remedied by continuing trial to give the nonviolating party time to interview a new witness or prepare to address new evidence." Hutchinson, 135 Wn.2d at 881.

Even if the introduction of the color photographs was a violation of discovery rules, it was reasonable for the court to find that extra preparation time with the color photographs and the testifying witness, often a suitable remedy, was appropriate in this case. See Id. We find no abuse of discretion.

3. Violation of Constitutional Rights

Clark's claim that the introduction of the color photographs violated his constitutional right to a fair trial is also unpersuasive. Late disclosure of *material facts* may violate a defendant's constitutional rights. State v. Price, 94 Wn.2d 810, 814, 620 P.2d 994 (1980). Clark bears the burden to show said violation. Barry, 184 Wn. App. at 796-97 ("A defendant must show the prosecution did not act with due diligence and 'material facts were withheld from the defendant . . . which essentially compelled the defendant to choose between two distinct rights': the right to a speedy trial and the right to adequately prepared counsel.") (internal quotation marks omitted) (citing State v. Woods, 143 Wn.2d 561, 582–83, 23 P.3d 1046 (2001)).

Sanctions and remedies for discovery violations that lead to violations of constitutional rights are generally governed by CrR 8.3, which primarily addresses

14

dismissal as a sanction. Our Supreme Court has "interpreted CrRLJ 8.3(b) as authorizing suppression (as well as lesser sanctions) at the discretion of the trial court." State v. Salgado-Mendoza, 189 Wn.2d 420, 431, 403 P.3d 45 (2017). If a defendant argues that a discovery violation led to a constitutional violation, the defendant must show the prosecutor's misconduct by a preponderance of the evidence. Id. The defendant also must show actual prejudice. Id. at 432.

Clark does not cite CrR 8.3 or provide required analysis. Clark knew that the State would present photographs of the injuries, and the State turned over the color photographs as soon as they received them. The color in the photographs does not inject new material facts into this case. We cannot locate unconstitutional misconduct or reversible prejudice. Thus, no reversal is required in this case.

D.     The Constitutionality of Washington's Harassment Statute

Clark argues his harassment conviction must be reversed because Washington's harassment statute, chapter 9A.46 RCW, is unconstitutional under Counterman v. Colorado, 600 U.S. 66, 82, 143 S. Ct. 2106, 216 L. Ed. 2d 775 (2023). We disagree.

Under RCW 9A.46.020(1)(a)(i), a person is guilty of harassment if they knowingly threaten "to cause bodily injury immediately or in the future." Statutes that criminalize threats can violate the First Amendment. See State v. Williams, 144 Wn.2d 197, 206, 26 P.3d 890 (2001); U.S. Const. amend I. However, the First Amendment does not protect true threats. Counterman, 600 U.S. at 72. In Counterman, the United States Supreme Court held that to avoid free speech infringement, a state must show a mens rea of recklessness, meaning the speaker

15

is subjectively aware and consciously disregarding the risk that the statements could be understood as threatening.  600 U.S. at 79.

This court has held that there is "no direct conflict between the statutory language and the Counterman articulation of what amounts to a true threat."  State v. Calloway, 31 Wn. App. 2d 405, 420, 550 P.3d 77, review granted, 3 Wn.3d 1031, 559 P.3d 1023 (2024).  By proving a mens rea of recklessness, the State can "comply with Counterman's articulation of what amounts to a true threat without undermining the statute."  Id. at 419.  Therefore, unless our Supreme Court declares otherwise, the statute is not facially unconstitutional.

The statute is also not unconstitutional as applied in Clark's case.  At Clark's trial, the jury instructions stated that for a harassment conviction, the "speaker must know of and disregard a substantial risk that the statement or act would be interpreted [as a threat]."  The jury instructions were consistent with the mens rea requirement of Counterman.  We find that Clark's conviction under the harassment statute is not unconstitutional.

E.    Double Jeopardy

Clark next argues his convictions for second degree assault by strangulation and felony harassment by means of a death threat violate double jeopardy.  We disagree.

"The constitutional guaranty against double jeopardy protects a defendant . . . against multiple punishments for the same offense."  State v. Noltie, 116 Wn.2d 831, 848, 809 P.2d 190 (1991); see also U.S. CONST. amend. V; CONST. art. I, § 9. "In order to qualify as the 'same offense' for double jeopardy purposes, the two

offenses must be the same both in law and in fact." State v. Arndt, 194 Wn.2d 784, 815-16, 453 P.3d 696 (2019). "'If the legislature authorized cumulative punishments for both crimes, then double jeopardy is not offended.'" Id. at 815 (quoting State v. Freeman, 153 Wn.2d 765, 771, 108 P.3d 753 (2005)).

> To assess such claims:

> We follow four analytical steps to determine legislative intent regarding whether cumulative punishment is authorized: (1) consideration of any express or implicit legislative intent, (2) application of the Blockburger, or 'same evidence,' test, (3) application of the 'merger doctrine,' and (4) consideration of any independent purpose or effect that would allow punishment as a separate offense.

Id. at 816 (citing Freeman, 153 Wn.2d at 771-73).

In applying the four-part analysis, Clark bears the burden of showing the convictions "are identical both in fact and in law." State v. Ray, No. 103509-8, slip op. at 16 (Wash. Sept. 11, 2025), https://www.courts.wa.gov/opinions/pdf/1035098.pdf. (quoting State v. Calle, 125 Wn.2d 769, 777, 888 P.2d 155 (1995)).[5] If they are not identical, we presume the legislature authorized separate punishments, absent "a clear indication of contrary legislative intent." Ray, slip op. at 16. We review a claim of double jeopardy de novo. Arndt, 194 Wn.2d at 815.

There is no express or implied legislative intent that clearly authorizes "separate punishments for second degree assault and felony harassment." Ray, slip op. at 18. We thus proceed to the Blockburger test. Id. at 19; Blockburger v.

---

[5] Our Supreme Court released the opinion for State v. Ray, on September 11, 2025. Neither party cited to Ray in their briefing since the opinion was not available to them. The State cited to Ray when they submitted a Statement of Additional Authorities under RAP 10.8.

17

<u>United States</u>, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

<u>Blockburger</u>'s same evidence test asks whether the two crimes are the same both in law and in fact. <u>Freeman</u>, 153 Wn.2d at 776. Even if they are the same in fact, if they are not the same in law, the <u>Blockburger</u> test creates a strong presumption that the legislature has authorized separate punishments. <u>Ray</u>, slip op. at 26. "'[I]f each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.'" <u>Blockburger</u>, 284 U.S. at 304 (quoting <u>Morey v. Commonwealth</u>, 108 Mass. 433, 434 (1871)).

Clark argues that his charges for harassment and assault are the same both in law and in fact. We disagree. The plain language of the statutes shows that the two charges require different facts to prove each crime. Under RCW 9A.36.021(1)(g), second degree assault by strangulation requires strangulation. Under RCW 9A.46.020(2)(b)(ii), harassment by means of a death threat requires a threat to kill. If Clark had not threatened the victim, there could be no harassment by death threat, but that would not preclude an assault conviction. If he had not strangled her, there could be no assault by strangulation, but that would not preclude a harassment conviction.

In response, Clark argues that, under <u>State v. Villanueva-Gonzalez</u>, convictions for two crimes "that are part of the same course of conduct violate the prohibition against double jeopardy." 180 Wn.2d 975, 329 P.3d 78 (2014). This argument potentially supports Clark's claim that the convictions are the same in fact, but does not address whether they are the same in law, since in <u>Villanueva-</u>

18

Gonzalez, the two assault statutes at issue were "plainly the same in law." 180 Wn.2d at 981-82. Since we find that Clark's convictions are not the same in law, we need not address whether they are the same in fact. Ray, slip op. at 26.

We hold that Clark's convictions for assault and harassment are distinct under Blockburger. This conclusion creates a strong presumption that the legislature has authorized separate punishments. Ray, slip op. at 26.

In relevant cases, the next step is the merger doctrine, but the merger doctrine does not apply here because neither conviction is a lesser included offense of the other. Id. at 16. Finally, we determine whether there is clear evidence of legislative intent to overcome the Blockburger presumption. Id. at 26. Our Supreme Court has held that for these two statutes, "indicators of legislative intent are not sufficiently clear to overcome the Blockburger presumption." Id. at 28. We conclude that the legislature authorized separate punishments for second degree assault and felony harassment. We reject Clark's double jeopardy claim.

### III. CONCLUSION

We affirm Clark's convictions.[6]

Díaz, J.

WE CONCUR:

Birk, J.

Mann, J.

---

[6] Because we affirm, we do not address Clark's final assignment of error, i.e., whether at resentencing, he must be assigned a new offender score.