313 So.2d 473 (1975)
Walter B. LEBOWITZ, Appellant,
v.
The STATE of Florida, Appellee.
No. 74-863.
District Court of Appeal of Florida, Third District.
May 27, 1975.
Rehearing Denied June 18, 1975.
*474 Philip Carlton, Jr. and Arthur Joel Berger, Miami, for appellant.
Robert L. Shevin, Atty. Gen., and Linda C. Hertz, Asst. Atty. Gen., for appellee.
Before PEARSON, HENDRY and HAVERFIELD, JJ.
PER CURIAM.
The appellant was convicted by a jury of the crime of buying, receiving or concealing stolen property, to wit: a purse, in violation of Fla. Stat. § 811.16, F.S.A. He appeals therefrom, and we affirm.
Six points have been raised on appeal; however, in his reply brief, appellant abandons his first point.
Appellant is an attorney with experience in criminal law. His chief accuser, and the state's star witness during the trial, was one George Foley.
Foley testified that the appellant requested that he (Foley) go to the Neiman-Marcus Department Store, located in Bal Harbour, wherein he would find a Judith Lieber brand purse, about six inches long, egg-shaped, with spangles on it and two silver chains. Appellant indicated that the purse was worth about $200, and his wife desired to have it for a society affair.
Foley was appellant's client and a convicted felon for crimes of theft and forgery. Foley testified that the appellant wanted him to secure the purse by means of a false check.
Foley did so, but a few days later he returned the purse and received $208 from the store as a cash refund. Then some *475 four days later, on November 30, 1973, Foley went back to Neiman-Marcus, this time accompanied by his roommate, John Sankey. The two men succeeded in stealing the purse.
Foley testified that he and Sankey then drove directly to the appellant's Miami Beach home, and Foley went inside and delivered the purse to the appellant who paid him $50 for his effort.
The appellant took the stand in his own behalf, and his account was sharply different. Appellant testified that he was holding a conference with Foley in his office, when he mentioned that he was busy and that he had to go to Neiman-Marcus to purchase the purse which his wife had seen and wanted.
Appellant stated that Foley offered, as a good-will gesture, to buy it for the appellant because of all the legal work which appellant had performed on Foley's behalf and also because of appellant's patience in collecting his legal fees from Foley. (Appellant testified that at the time Foley owed him $3,000 in fees.)
Further, appellant testified that several days prior to actually delivering the purse to him in a Neiman-Marcus box, Foley had shown him a receipt for it, and therefore appellant had no reason to suspect that Foley had stolen it.
The record reveals that both Foley and the appellant were subjected to intense examination by an able and competent defense attorney and prosecutor. Three of the five points on appeal concern the cross-examination in this case.
First, appellant argues that he was denied his right to remain silent and free from self-incrimination under the Fifth Amendment, and also his right to a fair trial, where the prosecutor inquired on cross-examination concerning the failure of the appellant to explain his possession of recently stolen property to law enforcement officers who were executing a search warrant in the appellant's home, seeking to find the purse.
The warrant was issued based upon an affidavit by a Miami Beach police officer and an affidavit by Foley, who was arrested a couple of days after he stole the purse and told police he had given it to the appellant. It was executed on December 8, 1973, a Saturday, at 8 o'clock in the morning.
The record reveals the following testimony by the appellant on cross-examination:
"Q [By Mr. Carhart] Okay. Now, the police say that when they got finished reading the warrant, you invited them to go search. Is that true?
"A No, sir.
"Q You didn't tell them to go search?
"A I didn't tell them anything, sir. They said go into the bedroom with your family. We want all three of you that woke up, or that are up, to sit on the bed so that we know where you are, something to that effect.
"Q Did you tell them, hey, I know what you're talking about, and I got a purse just like that upstairs in my bedroom?
"A We were upstairs when they read the warrant.
"Q Did you say hey, I know what you're talking about, and I got a purse like that right there in the closet?
"A I didn't get a chance to. I walked into the bedroom and like a minute later the officer walked in with the purse.
"Q Did they gag you?
"A I was sleeping when the maid called me, sir. I just had been awakened.
"Q But now you're awakened. Now you're listening to the search warrant, *476 and when they finished reading the warrant, did you say, just a second, gentlemen, I know what this is all about and I have got such a purse in my bedroom. I was given it as a gift by George Foley, who showed me a receipt for it. Is that what you said to them?
"A I didn't say anything to them. I followed their instructions, sir.
"Q Well, after they came out with the purse, did you say to them, wait a minute, officers, before you arrest me, or do anything else in this case, let me tell you something. I got that purse. All right. But, I got it from a fellow named George Foley. And, he's got a receipt for it. He paid cash for it. Did you tell them that?
"A When they came into the room, one of the officers read a card to me telling me that I had the right to make a telephone call, which I chose to do.
"Q Came in with the purse and the card?
"A Excuse me, sir.
"Q Came in with the purse and the card?
"A I don't think it was the same officer that came in with the purse.
"Q When the officer with the purse walked into the room 
"A Yes, sir.
"Q  is that when you told them, hey, I got this purse from George Foley as a gift?
"A I didn't make any statement to the officers. They did not ask me and I did not respond."
As can be seen, appellant's counsel did not interpose any objection during this exchange. Nevertheless, it is urged that the prosecutor's interrogation was plain error of constitutional magnitude, and therefore this court must reverse.
Since the United States Supreme Court handed down its decision in Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), there has been a clear divergence of opinion among members of the federal judiciary as to the precise issue raised by the appellant under this point. See, United States v. Ramirez, 441 F.2d 950 (5th Cir.1971); United States ex rel. Burt v. New Jersey, 475 F.2d 234 (3rd Cir.1973); United States v. Anderson, 162 U.S.App.D.C. 305, 498 F.2d 1038 (1974), see also Judge Wilkey's dissent; Deats v. Rodriguez, 477 F.2d 1023 (10th Cir.1973), see also Judge Barrett's dissenting opinion; Johnson v. Patterson, 475 F.2d 1066 (10th Cir.1973), see, Judge Breitenstein, dissenting.
In Harris v. New York, supra, the U.S. Supreme Court stated:
"Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. [Citations omitted.] Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process."
In Harris, the court held that the standards enunciated by the court in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), would not serve to shield a defendant from perjury by confronting him with a prior inconsistent statement.
The courts which have expressed the view that Harris does not apply where the defendant has stood mute (therefore making no "statement"), have reasoned simply that there has been no prior inconsistent statement, therefore no potential perjury; and the defendant may not be penalized for his prior silence when he subsequently takes the witness stand in his own behalf.
However, we align ourselves with those federal courts (including the U.S. *477 5th Circuit in United States v. Ramirez, supra) and those federal judges who have concluded that once the defendant takes the stand in his own defense, he waives his immunity under the Fifth Amendment and subjects himself, like any other witness, to the full truth-testing process. It is our view that such a waiver should not be partial, and the prosecution should not be unfairly hamstrung in testing a defendant's credibility.
We agree with Judge Breitenstein's reasoning in his dissenting opinion in Johnson v. Patterson, supra, wherein he commented:
"My position is that when a defendant testifies he may be impeached like any other witness. The use of pre-trial silence for impeachment depends on whether, in the circumstances presented, there is such inconsistency between silence and testimony as to reasonably permit the use of silence for credibility impeachment. In the case at bar the trial court did not exercise the discretion which it has in this area because there was no contemporaneous objection. I believe that the cross-examination was proper for impeachment purposes because common sense teaches that on arrest for forcible rape an accused will claim consent if such be the fact."
In the cause sub judice, there likewise was no contemporaneous objection. Also present in the instant case is a deeply-rooted common law inference that guilty knowledge may be drawn from the fact of unexplained possession of stolen goods. See, Barnes v. United States, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973); State v. Young, Fla. 1968, 217 So.2d 567.
The appellant staunchly denied ever suggesting to Foley that he steal the purse, adding, "I wouldn't jeopardize my practice and my possessions for a silly $200 purse."
In such a light, we think the state's cross-examination was a logical and common sense test of the appellant's credibility and one which the appellant certainly invited by his own testimony on direct examination. Indeed, we think that to have denied the state the right to point out the appellant's previous silence, in light of his elaborate version at trial of his transaction with Foley concerning the purse, would have been unfair to the state.
Next, appellant raises two points which focuses our attention upon the cross-examination by defense counsel of the witness Foley. Appellant first asserts that the trial court denied him due process and his right of confrontation by refusing to permit the appellant to impeach Foley's credibility by use of conversations which the defendant had with psychiatrists.
Appellant vigorously attacked Foley's competence to testify as a witness due to his past mental problems. Outside of the jury's presence, appellant offered a psychiatrist with the Florida Division of Corrections who evaluated Foley at the state's Lake Butler Center. The psychiatrist diagnosed Foley as chronically schizophrenic.
However, the state also presented another psychiatrist and proferred two others who felt Foley was competent to testify. The record shows that the trial judge ruled that the jury could hear psychiatric opinions concerning Foley's competence but no specific conversation between the patient and psychiatrist during their consultations.
We find no abuse of discretion in the court's ruling. See, 35 Fla.Jur., Witnesses § 53. We note that Foley specifically objected to revelation of any of his communications with the psychiatrists, and under Fla. Stat. § 90.242, F.S.A. his conversations with the psychiatrists were privileged. Cf., Schetter v. Schetter, Fla. App. 1970, 239 So.2d 51.
Moreover, any error in the court's ruling was harmless under Fla. Stat. § 924.33, F.S.A. because from the record we cannot find that the appellant called any of the psychiarists to testify before the jury concerning Foley's alleged incompetence. *478 Also, the record shows that defense counsel managed quite skillfully to elicit from Foley for the benefit of the jury some of the rather bizarre statements Foley supposedly had made to psychiatrists (including his statements regarding his connections with the F.B.I. and the Mafia and his statement that while in Vietnam, for some reason, the F.B.I. attempted to shoot down his helicopter).
We would point out also that Foley testified on cross-examination that he had a college degree in psychology and that he was proficient at lying or otherwise faking his replies to the psychiatrists and feigning his behavior traits so that he could be declared insane and avoid criminal responsibility for many of the charges against him.
The next point raised by the appellant questions the state's introduction of testimony regarding the commission of alleged collateral crimes by the appellant, most of which involved his relationship with the witness Foley.
Appellant contends that the prosecutor was overzealous; acted in violation of the so-called Williams rule [See, Williams v. State, Fla. 1959, 110 So.2d 654; Drayton v. State, Fla.App. 1974, 292 So.2d 395]; and therefore prejudiced his right to a fair and impartial trial.
The Williams Rule, as this court stated in Drayton is an evidentiary rule which requires that where the state introduces evidence of other crimes, they must be relevant to a matter at issue. See also, Lawson v. State, Fla.App. 1974, 304 So.2d 522. One such issue specifically stated in Drayton was the defendant's alleged guilty knowledge.
In the instant case, as we have previously said, the appellant vehemently denied knowledge that the purse was stolen by Foley. However, on cross-examination of Foley by the defense it was brought out that Foley was attempting to "set up" the appellant, cooperating with the police by attempting to deliver a stolen television set to the appellant.
In addition, defense counsel also drew a reply from Foley on cross-examination that any legal work which the appellant ever performed for Foley was paid for with stolen "merchandise, money and different things that he (the appellant) wanted."
On redirect, Foley stated that on several other occasions he had delivered stolen television sets to the appellant and stolen airline tickets.
In sum, we think that the appellant himself opened the inquiry into alleged collateral criminal activity between himself and Foley and possibly other clients. Is is our conclusion that these collateral matters were relevant to the issue of guilty knowledge, and reversible error has not been shown.
Appellant's last two points challenge an alleged conversation between a juror and a state's witness during a lunch break, and the sufficiency of the search warrant procured by the police.
With respect to the first of these two points, appellant concedes that his motion for a new trial (which first brought to the trial court's attention the alleged contact between a juror and a witness) was filed untimely. Therefore, this matter has not been preserved for our consideration on appeal at this time. See, Thompson v. State, Fla.App. 1974, 300 So.2d 301; Thomas v. State, Fla.App. 1971, 250 So.2d 308.
We would observe that in order to set aside a jury verdict due to misconduct, the alleged misconduct must be shown to have influenced the verdict and to have caused injury to the complaining party. Russom v. State, Fla.App. 1958, 105 So.2d 380. The record before us is devoid of any evidence indicating adverse influence upon any member of the jury stemming from the contact between the juror and witness.
The witness, an employee of Neiman-Marcus, was called by the state basically to establish that the purse had been stolen *479 from the store. Without more appearing in the record, it would be impossible for this court to conclude that any juror could have been prejudiced or improperly swayed by the lunchroom conversation.
Lastly, appellant's contention that the affidavits by a police officer and Foley were constitutionally defective and insufficient under Fla. Stat. § 933.18, F.S.A. to authorize a finding of probable cause for issuance of a search warrant by an independent magistrate has been considered and found unmeritorious.
We have examined the two affidavits, and we find therein ample facts within the personal knowledge of the two affiants to justify issuance of a search warrant. See, State v. Wolff, Fla. 1975, 310 So.2d 729 (1975); Andersen v. State, Fla. 1973, 274 So.2d 228; Reed v. State, Fla. 1972, 267 So.2d 70.
Therefore, for the reasons stated and upon the authorities cited and discussed, the judgment and sentence appealed are affirmed.
Affirmed.