Robert Louis BABERS,
Petitioner-Appellant,

v.

W. J. ESTELLE, Director, Texas
Department of Corrections,
Respondent-Appellee.

No. 79–2388

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

April 30, 1980.

Rehearing Denied June 13, 1980.

Don D. Bush, Dallas, Tex., for petitioner-appellant.

Mark White, Atty. Gen., Charles A. Sharman, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before GODBOLD, REAVLEY and ANDERSON, Circuit Judges.

PER CURIAM:

Appellant Robert Babers was convicted by a jury of the offense of rape, and was

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

sentenced to 150 years confinement in the Texas Department of Corrections. On appeal, Babers' conviction was affirmed by the Texas Court of Criminal Appeals on November 15, 1972. After an unsuccessful state habeas application at which an evidentiary hearing was held, Babers brought a federal habeas petition which was dismissed for failure to exhaust state remedies. Babers brought a second state habeas which was denied without written opinion. He thereupon brought this second federal habeas petition which was initially dismissed by the federal district court on May 10, 1977, for failure to exhaust state remedies. On appeal, this Court inquired of the state trial court whether the second state application for habeas had been decided on its merits. The state trial court, in response, filed Findings of Fact and Conclusions of Law on December 8, 1977. The Texas Court of Criminal Appeals denied the second state application without written order on December 21, 1977. This Court then in an unpublished opinion reversed the federal district court, holding that Babers had exhausted his state remedies, and remanded the cause to the district court for a determination on the merits of Babers' claims.

Babers presented six claims, all of which were considered by the district court and rejected: (1) That he was not officially advised of his rights; (2) That he was compelled to take a lie detector test, the results of which were suppressed from him and his attorney; (3) That the prosecutrix's lineup identification and in-court identification of Babers were tainted by a prior photographic identification and further by the fact that the prosecutrix was advised that Babers had failed a lie detector test; (4) That the lineup in which the prosecutrix identified Babers was improperly and suggestively constituted; (5) That the prosecutrix and her husband were allowed to simultaneously view the lineup in which the prosecutrix identified Babers; and (6) That he was denied effective assistance of counsel. We affirm the district court's rejection of each of Babers' claims.[1] The only claims which warrant discussion are his claims that the in-court identification should have been suppressed because of a suggestive pre-trial lineup, and that his counsel was ineffective because he failed to object to the in-court identification.

Very early on the morning of August 16, 1970, Mr. and Mrs. Green, an elderly couple, left Dallas, Texas, driving to Houston for a cobalt treatment for Mr. Green's cancer. Approximately 6:00 A.M. they had a flat tire while on Interstate 45. Shortly thereafter, a stranger stopped to help Mr. Green change the tire. After helping them change the tire, the man directed the Greens to a service station in nearby Palmer, Texas. On the way to the service station, the stranger had car trouble and the Greens picked him up and took him with them to the service station in order to return the favor. They arrived at the service station about 6:30 A.M., "just coming good daylight," according to the attendant there, Robert Tibbs. Because the attendant could not help the man with his stalled car, the Greens offered to take the individual back to his car. On the way back, the stranger threatened the lives of the Greens with a screwdriver and directed them to drive their car down into a bottom approximately one and one-half miles from the interstate. Mrs. Green testified that it was daylight as they drove into the bottom and the lights of their car were turned off. In the bottom, the stranger tied Mr. Green to a tree with barbed wire, forced Mrs. Green to strip a

---

1. In his brief on appeal, Babers argues only that the district court erred in concluding that federal habeas relief was barred under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Babers argues that the Texas courts, in reviewing his state habeas applications, considered the merits of his claims and did not rely on the contemporaneous objection rule. Our recent case, *Moran v. Estelle*, 607 F.2d 1140 (5th Cir. 1979), supports Babers' suggestion that a federal habeas court will consider the merits when the state court has disregarded its contemporaneous objection rule and considered the merits. However, in this case, the district court's reliance on *Wainwright v. Sykes* was only an alternative ground for its decision; the district court did consider and reject Babers' claims on the merits. Similarly, we have reviewed and rejected Babers' claims on the merits.

short distance away and raped her, after which he tied Mrs. Green to a post with baling wire and escaped in the Greens' car.

The lineup occurred on January 12, 1971, after Babers had been arrested for shoplifting, approximately 5 months after the assault on Mrs. Green. Babers, who was 27 at the time, was placed in a lineup of four other black males who were nine years his junior. Babers claims he was of a darker color than the other participants, that three of the participants were two inches shorter than Babers, and that the other participant was five inches taller. Mrs. Green viewed the lineup with her husband, but there was no oral communication between them. At the time the Greens were called in to view the lineup, they were not told that any of those individuals in the lineup was a suspect. Both Mrs. Green and Mr. Green identified Babers by writing his name on a piece of paper. After this identification, the police told the Greens they had chosen the "right man." Mr. Green died after this lineup and before the trial, leaving Mrs. Green as the only witness who positively identified Babers at his trial.

■ The district court found that, even if there were an impermissibly suggestive lineup, this would not taint the in-court identification, because there was an independent basis for Mrs. Green's in-court identification.[2] It is clear that an improper or unnecessarily suggestive lineup, showup, or photographic display does not *per se* require the suppression of an in-court identification. *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178

(1967); *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Various expressions have been utilized to describe the test to determine whether an in-court identification is admissible despite some impropriety in a pre-trial identification. Among these are (1) whether there is an "independent origin" of the in-court identification, *Wade*, 388 U.S. at 242, 87 S.Ct. at 1940; *Gilbert*, 388 U.S. at 272, 87 S.Ct. at 1956; (2) whether the "totality of the circumstances surrounding" the pre-trial identification demonstrates a violation of due process, *Stovall*, 388 U.S. at 302, 87 S.Ct. at 1972; (3) whether there is "substantial likelihood of misidentification," *Simmons*, 390 U.S. at 384, 88 S.Ct. at 971; *Biggers*, 409 U.S. at 201, 93 S.Ct. at 383; *Manson v. Braithwaite*, 432 U.S. 98, 107, 97 S.Ct. 2243, 2249, 53 L.Ed.2d 140 (1977); and (4) whether the identification is "reliable." *Manson*, at 114, 97 S.Ct. at 2253.

■ In this case, the facts clearly demonstrate an independent source for Mrs. Green's in-court identification such that there is no substantial likelihood of misidentification. Mrs. Green was with her assailant for at least one-half hour and probably longer. There was ample light during much of this time. While driving to the bottom where the rape occurred, they were able to cut off the car headlights. Mrs. Green was not a casual observer of the crime but was the victim of a crime which of necessity placed her in close proximity to her assailant. At trial, Mrs. Green stated that Babers' "face has been before me ever since," and positively identified him three times in the strongest of terms. Mrs. Green described Babers as 5 feet, 7 inches tall, weighing about 145 pounds, wearing an earring at the time of the assault. Babers is 5 feet, 10 inches tall and weighs 155 pounds. When he was arrested, he was wearing an

---

2. The district court also found that the lineup identification did not violate the constitutional rights of Babers. Because we decide this case on the existence of an independent origin for Mrs. Green's in-court identification, we do not have to reach the question of whether the lineup was impermissibly suggestive. We note that in *Caver v. Alabama*, 537 F.2d 1333 (5th Cir. 1976), *cert. denied* 430 U.S. 910, 97 S.Ct.

1183, 51 L.Ed.2d 587 (1977), this court stated, "In *Foster v. California*, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969), the Court held that a line-up is unduly suggestive when it is virtually inevitable that the witness will select the individual whom the police have singled out." *See also, Government of Canal Zone v. Waldron*, 574 F.2d 283 (5th Cir. 1978).

earring. While Babers and members of his family testified at trial that his ear was not pierced until a time 4 months after the rape, his former employer and mother-in-law testified he wore an earring at a time before the rape.

These are many of the same factors the Supreme Court relied upon in *Biggers, supra,* to find that there was no substantial likelihood of misidentification with respect to a prosecutrix's identification of a rapist. There the prosecutrix had been with her assailant for almost half an hour; she had viewed him under adequate artificial light in her house and under the full moon; her description was more than ordinarily thorough; she had no doubt about her identification, saying there was something about her assailant's face, "I don't think I could ever forget"; and there was a lapse between the rape and the confrontation of seven months. As in *Biggers,* we are compelled to find that there is no substantial likelihood of misidentification by Mrs. Green, and that her in-court identification was admissible.

Because we hold that the in-court identification was proper, it is obvious that any objection which might have been made by Babers' trial counsel would have been futile. Accordingly, Babers' claim that his trial counsel was ineffective because he failed to object to the in-court identification, has no merit.[3]

AFFIRMED.

---

**3.** We recognize that the *Biggers* decision came down after Babers' trial. Nevertheless, at the time of his trial the Supreme Court in *Wade, Gilbert,* and *Simmons* had already announced the "independent origin" and the "substantial likelihood of misidentification" tests, both of which utilized many of the same factors relied on in *Biggers, i. e.,* opportunity to observe the defendant, discrepancy or lack thereof between pre-lineup or showup description with actual description and certainty of in-court identification. In *United States v. Venere,* 416 F.2d 144 (5th Cir. 1969), decided before Babers' trial, this Court held that a witness who had less opportunity than Mrs. Green to observe a defendant, but who had testified at length on how he remembered the defendant, had established an independent source for his in-court identification. With these cases decided at the time of Babers' trial, and *Biggers* decided shortly thereafter, Babers' attorney's decision not to object to Mrs. Green's in-court identification does not constitute a failure to render reasonably effective counsel. *Friedman v. United States,* 588 F.2d 1010 (5th Cir. 1979); *Herring v. Estelle,* 491 F.2d 125 (5th Cir. 1974); *MacKenna v. Ellis,* 280 F.2d 592 (5th Cir. 1960), *cert. denied,* 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961).