UNITED STATES of America ex rel.
Melvin Lee SMITH,
Petitioner-Appellee,

v.

Gayle M. FRANZEN, et al.,
Respondents-Appellants.

No. 79–2107.

United States Court of Appeals,
Seventh Circuit.

Aug. 26, 1981.

Rehearing and Rehearing En Banc
Denied Nov. 19, 1981.

Carolyn B. Notkoff, Asst. Atty. Gen., Chicago, Ill., for petitioner-appellee.

Andrew Berman, Chicago, Ill., for respondents-appellants.

Before CUMMINGS, Chief Judge, SWYGERT, Senior Circuit Judge, and FAIRCHILD, Circuit Judge.

SWYGERT, Senior Circuit Judge.

Petitioner Melvin Lee Smith was convicted of armed robbery in a jury trial in the Circuit Court of Kane County, Illinois. The Illinois Appellate Court affirmed, *People v. Smith*, 52 Ill.App.3d 583, 10 Ill.Dec. 303, 367 N.E.2d 756 (1977), the Illinois Supreme Court denied leave to appeal, and the United States Supreme Court denied certiorari, *Smith v. Illinois*, 436 U.S. 961, 98 S.Ct. 3079, 57 L.Ed.2d 1127 (1978).

Petitioner then filed this petition for a writ of habeas corpus in the United States District Court for the Northern District of Illinois. That court granted the writ, and this court affirmed, *United States ex rel. Smith v. Rowe*, 618 F.2d 1204 (7th Cir. 1980). The Supreme Court granted certiorari, *Franzen v. Smith*, 449 U.S. 810, 101 S.Ct. 57, 66 L.Ed.2d 13 (1980), and remanded the case to this court for reconsideration in light of *Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980).

Pursuant to our Circuit Rule 19, the parties have submitted additional briefs to the court on the issue that is before us on remand: whether the prosecutor's comments in closing argument about the failure of petitioner and his witness to come forward with his alibi prior to trial constituted constitutional error. We conclude that the prosecutor's attempt to impeach petitioner by his post-arrest silence amounted to a

violation of the right to fundamental fairness guaranteed by the Due Process Clause. We therefore affirm the order of the district court granting the writ of habeas corpus.

## I

Petitioner was arrested for armed robbery on April 1, 1974; he was indicted in June, 1974, tried on September 30 and October 1, 1974, and convicted. At trial, both petitioner and his girlfriend, Betty Walls, testified that they were home together on the night of the robbery. On cross-examination, Walls testified that a police officer came to her home the evening before petitioner's trial, but she refused to talk to him; she also stated that petitioner was present. Petitioner testified that he told the police officer that he could interview Walls only in the presence of petitioner's attorney.

In his closing argument, the prosecutor stated:

The defense is alibi. Now, this is very interesting alibi. I want you all to think what you would do in a situation like this, what you would do, and if you feel that this alibi was handled the way you would handle it I will be surprised.

\* \* \* \* \* \*

Okay. That when she finds out that he is arrested for this offense, the day she found out she claims it was Sunday, he says it was Monday, she's a little mixed up on her days, but when she found out she didn't turn to the police and say: 'For Godsake, he couldn't have done it, he was with me.' No, this alibi couldn't come out right then and there.

In fact, yesterday when we attempted to talk to her about an alibi she wouldn't talk to us, she wouldn't talk to the police officer. Melvin Smith, the same guy that wasn't at the hearing, that hid in the back, maybe, told her not to. If you had

what this is supposed to be, an ironclad alibi, you were home with your spouse, or your friend, or your buddy, or girl friend or boy friend and you knew it, one week from the day that the thing happened, had happened on a late Monday, early Tuesday, and you knew on Monday or Sunday next that he was supposed to, wouldn't you run to the police and say: 'Hey, look, he was with me, he didn't do it.'

Which one of you would not? They didn't. They had no obligation to. By the way, they have no obligation to tell us anything, but wouldn't you, if you were innocent and if you had a loved one in trouble, run in and tell the police? You're right, you would.[1]

In his rebuttal to the defense attorney's closing argument, the prosecutor commented:

And even when the police were out there to ask her about it she wouldn't talk—or he wouldn't let her talk about it. That's a curious thing. Why, why wouldn't anybody talk about the alibi until we get to Court?

Petitioner contends that the prosecutor's attempts to impeach defendant's alibi testimony by his post-arrest silence violated his Fifth Amendment right to remain silent and his due process rights.

## II

As a preliminary matter, we must consider whether the prosecutor's comments referred to petitioner's silence or only to the silence of his alibi witness.[2] The district court held, and this court agreed, that although the primary focus of the prosecutor's closing argument was on impeaching Walls's testimony, at times his language clearly referred to both petitioner's and Walls's failure to come forward with the alibi before trial. *United States ex rel. Smith v. Rowe,* 618 F.2d 1204, 1210 (7th Cir.

---

1. As we noted in our earlier opinion, the prosecutor was correct in stating that neither petitioner nor his witness had any duty to come forward with his alibi: "absent an alibi statute that passes constitutional muster, *Wardius v. Oregon,* 412 U.S. 470 [93 S.Ct. 2208, 37 L.Ed.2d 82] ... (1973), there was no obligation on

Smith or Walls to inform the police or the prosecution of the alibi." 618 F.2d at 1206.

2. Petitioner does not challenge the prosecution's attempt to impeach the credibility of his defense witness by her prior silence.

1980) (district court's opinion reprinted in appendix to this court's opinion). Further, the district court found that the prosecutor's remarks would "naturally and necessarily" be taken by the jury as references to petitioner's silence. *Id.* at 1210–11.

Petitioner contends that *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), controls this case. In *Doyle,* petitioners at trial testified to an exculpatory version of the facts that they had not previously told to the police or prosecutor. The prosecutor then cross-examined them about their failure to give that explanation to the police at the time of their arrest. The Supreme Court held that the use of petitioners' silence at the time of their arrest to impeach their trial testimony violated the Due Process Clause of the Fourteenth Amendment. *Id.* at 619, 96 S.Ct. at 2245. The Court reasoned that

> [s]ilence in the wake of these [*Miranda*] warnings may be nothing more than the arrestee's exercise of these ... rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested.... Moreover, while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.

*Id.* at 617–18, 96 S.Ct. at 2244–45.

■ As we noted in our previous opinion, however, "*Doyle* left open the very question

**3.** The Court stated:
> Petitioners also claim constitutional error because each of them was cross-examined by the prosecutor as to why he had not told the exculpatory story at the preliminary hearing or any other time prior to the trial.... [This] averment[ ] of error present[s] different considerations from those implicated by cross-examining petitioners as defendants as to their silence after receiving *Miranda* warnings at the time of arrest. In view of our disposition of this case we find it unnecessary to reach these additional issues.

presented in the instant case." 618 F.2d at 1206. The Supreme Court in *Doyle* dealt with impeachment by silence at the time of arrest, just after *Miranda* warnings were given, and while the arrestee was in custody, and did not consider the question whether the prosecutor's references to petitioners' failure to tell their exculpatory story at any time prior to trial were unconstitutional.[3] Because the right to remain silent operates from the time of interrogation or arrest through the trial, absent a valid waiver, we find that the *Doyle* reasoning applies to the instant case and thus hold that the prosecutor's comments violated petitioner's due process rights.

Respondents submit that the analysis in *Jenkins v. Anderson,* 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980), addresses the issue presented in this case. In *Jenkins,* petitioner testified at trial that he had acted in self-defense; in cross-examination and closing argument, the prosecutor attempted to impeach petitioner's credibility by referring to his pre-arrest silence. The Supreme Court held that the use of pre-arrest silence did not violate either the right to remain silent or due process.[4] *Id.* at 238, 240, 100 S.Ct. at 2129, 2130. Respondents would have us adopt the reasoning of *Jenkins* because in both *Jenkins* and the case at bar the silence at issue occurred in a noncustodial situation and in those circumstances the distinction between pre- and post-arrest silence is unimportant. We cannot agree with that analysis; *Jenkins* does not consider the question of post-arrest silence, and is not analogous to the instant case.

*Doyle, supra,* 426 U.S. at 616 n. 6, 96 S.Ct. at 2244 n. 6.

**4.** The Court in *Jenkins* expressly distinguished *Doyle* :
> In this case, no governmental action induced petitioner to remain silent before arrest. The failure to speak occurred before the petitioner was taken into custody and given *Miranda* warnings. Consequently, the fundamental unfairness present in *Doyle* is not present in this case.

*Jenkins, supra,* 447 U.S. at 240, 100 S.Ct. at 2130.

Respondents also argue that the holding in *Raffel v. United States*, 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054 (1926), which the Supreme Court reaffirmed in *Jenkins, supra*, 447 U.S. at 235, 100 S.Ct. at 2127, controls this case. In *Raffel*, the defendant did not testify at his first trial. At his second trial, the defendant took the stand and was cross-examined about his prior silence. The Court held that impeaching a defendant who chooses to testify by his earlier silence does not violate the Fifth Amendment. *Raffel, supra*, 271 U.S. at 496–97, 46 S.Ct. at 567.

We find that *Raffel* is legally distinguishable from the case at bar. The *Raffel* Court relied solely on the Fifth Amendment right to remain silent and its underlying policies.[5] We base our decision today upon the right to fundamental fairness guaranteed by the Due Process Clause, as did the Supreme Court in *Doyle, supra*, 426 U.S. at 618, 96 S.Ct. at 2245. The policies underlying the fundamental fairness doctrine of the Fourteenth Amendment are different from those underlying the Fifth Amendment. Therefore, analysis of the use of impeachment by post-arrest silence under the Due Process Clause compels a consideration of different factors than does analysis of the same question under the Fifth Amendment.

■ In the case at bar, the prosecutor's comments referred generally to petitioner's failure to come forward with the alibi at any time prior to the trial and specifically to petitioner's silence when the police came to his home on the evening before his trial. All of the prosecutor's references thus related to petitioner's silence after his arrest and therefore, presumably, after he received *Miranda* warnings.[6] The reasons relied on by the Supreme Court in *Doyle* to find a violation of fundamental fairness are equally applicable to the case at bar: first, petitioner's failure to come forward with his alibi prior to trial is ambiguous because his silence could indicate *either* that he was exercising his right to remain silent *or* that his alibi was a recent fabrication; second, the *Miranda* warnings imply that the government will not penalize a criminal defendant who exercises his right to remain silent. Further, the record indicates that petitioner's counsel chose to withhold notice of the alibi defense based on his conclusion that the Illinois Alibi Defense Statute, Ill. Rev.Stat. ch. 38, § 114–14, was unconstitutional after the Supreme Court's decision in *Wardius v. Oregon*, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973). Under these circumstances, we believe that the prosecutor's attempt to impeach petitioner's alibi by his post-arrest silence constituted a denial of due process. *See Williams v. Zahradnick*, 632 F.2d 353, 360 (4th Cir. 1980).

The district court concluded that the error in this case was not harmless; we affirmed that finding in our prior opinion, *United States ex rel. Smith v. Rowe, supra*, 618 F.2d at 1207, 1213–14 & n.8. For the reasons stated in the opinion of the district court, we reaffirm our holding that the prosecutor's comments were not harmless error. *See Williams v. Zahradnick*, 632 F.2d 353, 364–65 (4th Cir. 1980); *United States v. Shavers*, 615 F.2d 266, 269–70 & n.6 (5th Cir. 1980); *Chapman v. United States*, 547 F.2d 1240, 1249 (5th Cir.), *cert. denied*, 431 U.S. 908, 97 S.Ct. 1705, 52 L.Ed.2d 393 (1977). Accordingly, we affirm the order of

---

**5.** The Court in *Raffel* reasoned:

The safeguards against self-incrimination are for the benefit of those who do not wish to become witnesses in their own behalf and not for those who do. There is a sound policy in requiring the accused who offers himself as a witness to do so without reservation, as does any other witness. We can discern nothing in the policy of the law against self-incrimination which would require the extension of immunity to any trial or to any tribunal other than that in which the defendant preserves it by refusing to testify.
271 U.S. at 499, 46 S.Ct. at 568.

**6.** There is nothing in the record that indicates whether or not petitioner received the *Miranda* warnings at the time of his arrest. We presume that proper procedure was followed. Further, petitioner's statement to the police that they could interview Walls only in the presence of his attorney indicates awareness of the rights to remain silent and have an attorney present during questioning.

the district court granting the writ of habeas corpus.

FAIRCHILD, Circuit Judge, dissenting.

I respectfully dissent. I cannot join in the opinion because there is no showing that the petitioner was given *Miranda* warnings. It is the giving of the *Miranda* warning that triggers the holding of *Doyle* and it would be petitioner's burden to show that that predicate existed.