Walter B. LEBOWITZ,
Petitioner-Appellant,

v.

Louie L. WAINWRIGHT, Secretary, Florida Department of Corrections, et al., Respondent-Appellee.

No. 80–5855.

United States Court of Appeals, Eleventh Circuit.

March 15, 1982.

Rehearing Denied April 26, 1982.

Simon, Schindler & Tripp, Judith Anne Bass, Tobias Simon, Miami, Fla., for petitioner-appellant.

Paul Mendelson, Asst. Atty. Gen., Miami, Fla., for respondent-appellee.

Before FAY, ANDERSON and CLARK, Circuit Judges.

FAY, Circuit Judge:

By his petition for writ of habeas corpus, the defendant invites this court to travel along a time line of existing Supreme Court decisions concerning a prosecutor's ability to comment on a defendant's silence. Specifically, we have been asked to find that a prosecutor is prohibited from questioning or commenting on the defendant's failure to provide an exculpatory explanation when confronted by police in what has been alleged to be a custodial detention prior to arrest. The facts of this case, however, do not support petitioner's premise that a custodial detention occurred prior to his arrest as we fail to detect the slightest existence of mandatory confinement. We therefore decline the petitioner's invitation. We conclude that absent the custodial detention alleged by petitioner, the facts are controlled by the recent Supreme Court decision of *Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980), which permits impeachment of a defendant with his pre-arrest silence. The District Court's denial of habeas corpus relief is therefore affirmed.

Early on the morning of December 8, 1973, the police arrived at the home of the defendant, Walter B. Lebowitz, to execute a search warrant. The object of the search was a purse allegedly stolen by one of the defendant's clients and thought to be in the possession of the defendant. The maid met the officers at the door and permitted them to enter the house. She announced the officer's presence to Lebowitz, who met them as he descended from his upstairs bedroom.

The officers explained their presence to Lebowitz and read the search warrant to him. The defendant was not asked nor did he volunteer any information as to the location of the purse. Within the next three to five minutes the officers located the purse in a dressing room area adjacent to the upstairs bedroom.[1] As soon as one of the officers found the purse, he brought it into the bedroom area where the defendant had been sitting. Lebowitz was immediately advised of his rights after which he was arrested.

During his trial, the prosecution called two of the police officers to testify. The first officer testified that they entered the house, encountered Mr. & Mrs. Lebowitz, and proceeded to search the defendant's bedroom and adjoining dressing rooms. On cross examination defense counsel questioned why the police officers had not asked the defendant where the purse was located.[2] The second officer provided further details of the purse's discovery. Once again on cross examination, defense counsel questioned the officer as to whether the defend-

---

1. The briefness of the interval during which the search took place is illustrated by the defendant's testimony.

   "Q. When were you arrested?
   A. I was arrested that very morning right after 8:00, practically minutes after they arrived because one of the officers walked right in and the purse was lying right there and picked it up."
   Trial Transcript at 759 [hereinafter cited as T. Tr.].
   "Q. Did you say hey, I know what you're talking about, and I got a purse like that right there in the closet?
   A. I didn't get a chance to. I walked into the bedroom and like a minute later the officer walked in with the purse."
   T. Tr. at 871.

2. Q. Why didn't you ask him where the purse was?
   A. I don't know why. I didn't ask him where the purse was.

   Q. I mean, would that not, sir, have been a logical question?
   A. In describing the pocketbook to him in the search warrant, he did not volunteer any information.
   Q. Of course he didn't volunteer any information, but you asked him, you took it upon yourselves to ask him where his bedroom was, Sergeant. Why didn't you say to him, Mr. Lebowitz, you know him as an attorney, did you not, sir?
   A. Yes, sir.
   Q. All right. And why didn't you just say to Mr. Lebowitz, do you have a purse, and describe it to him, and say if so, would you mind going and getting it for me? Why didn't you say that to him?
   A. I felt the purse, the description and the reason why we were there was self-explanatory as far as the search warrant having been read to him.
   T. Tr. at 297–98.

ant had been asked the location of the purse.[3]

During presentation of the defense, Lebowitz provided extensive testimony on the search and attempted to prove that the purse had been given to him by a client as partial payment for services rendered. During his direct testimony his attorney asked: "Did any of the police officers who came to the house ask you if you had a purse such as this, and if so, would you go ahead and get it for him?" The defendant answered: "If any of them would have said, 'Do you have such a purse, and if so, would you please give it to me,' I would have gone to get it." [4] The prosecutor then followed up on this testimony as he questioned the defendant on whether he had volunteered any help in locating the purse or volunteered the explanation which he now set forth as a defense.[5] At no time

3. Q. Did you ask Mr. Lebowitz if he had a purse described in the search warrant?
A. Did I? No, sir.
Q. Who did?
A. I don't know, sir.
Q. Did anybody ask him, do you have a purse such as this?
A. I don't know.
Q. Why didn't you, sir, before going into the dressing room to make your job that much easier, say, Mr. Lebowitz, do you have, or does your wife have a purse such as that which I have described to you? Why didn't you do that, sir?
A. He invited us to search.
Q. Did you ask him anything about the purse?
A. No, sir, I did not.
T. Tr. at 319–20.

The State asserts that this line of cross examination by defense counsel "opened the door" or invited the prosecutor's subsequent cross examination and comment. Because we find the circumstances insufficient to bar impeachment by use of the defendant's silence, it is unnecessary for us to examine the prosecutor's actions on this assertion. Nevertheless, these questions do appear to encourage a prosecutor's use of a defendant's silence.

4. T. Tr. at 758.

5. Q. I'm getting to the part where they read the warrant. Now, at this time, they're just explaining to you why they're there, right?
A. Yes.
Q. And they're reading you the warrant to explain why they're there, right?
A. That's right, sir.
Q. When you heard them reading those words about this Judith Lieber purse, Judith Lieber brand purse, bubble-style, did that ring a little bell in your head?
A. Yes.
Q. You knew what they were talking about, didn't you?
A. Yes, I did.
Q. Okay. Now, the police say that when they got finished reading the warrant, you invited them to go search. Is that true?
A. No, sir.
Q. You didn't tell them to go search?

A. I didn't tell them anything, sir. They said go into the bedroom with your family. We want all three of you that woke up, or that are up, to sit on the bed so that we know where you are, something to that effect.
Q. Did you tell them, hey, I know what you're talking about, and I got a purse just like that upstairs in my bedroom?
A. We were upstairs when they read the warrant.
Q. Did you say hey, I know what you're talking about, and I got a purse like that right there in the closet?
A. I didn't get a chance to. I walked into the bedroom and like a minute later the officer walked in with the purse.
Q. Did they gag you?
A. I was sleeping when the maid called me, sir. I just had been awakened.
Q. But now you're awakened. Now you're listening to the search warrant, and when they finished reading the warrant, did you say, just a second, gentlemen, I know what this is all about and I have got such a purse in my bedroom. I was given it as a gift by George Foley, who showed me a receipt for it. Is that what you said to them?
A. I didn't say anything to them. I followed their instructions, sir.
Q. Well, after they came out with the purse, did you say to them, wait a minute, officers, before you arrest me, or do anything else in this case, let me tell you something. I got that purse. All right. But, I got it from a fellow named George Foley. And, he's got a receipt for it. He paid cash for it. Did you tell them that?
A. When they came into the room, one of the officers read a card to me telling me that I had the right to make a telephone call, which I chose to do.
Q. Came in with the purse and the card?
A. Excuse me, sir.
Q. Came in with the purse and the card?
A. I don't think it was the same officer that came in with the purse.
Q. When the officer with the purse walked into the room—
A. Yes, sir.
Q. —is that when you told them, hey, I got this purse from George Foley as a gift?

during the course of cross examination did defense counsel lodge an objection to this line of questioning.

In his closing argument the prosecutor made the following comment:

> Here's a man, the police come to his house. Knock knock. They let them in. The maid advises him the police are here. They have a search warrant. Now, that might take you by surprise or it might take most people by surprise, but this man is a lawyer. You're dealing in his field. So, he goes down there and the police read him the warrant and they describe the stolen property and they go into the description of the purse. Now, from your common sense, from your everyday experience, what does the person whose heart is pure, who's an innocent person, a possible victim of circumstances, say at that point? Oh, my God, I got a purse like that up in my bedroom. A client gave it to me the other day as a gift. Does he say, wait a minute, fellows, I know I must have a receipt here someplace. He showed it to me. You don't have to search my house, gentlemen. I've got that purse. Let me get it for you. And, I want to give you a statement right now where I got it from, who gave it to me. And, I will stand as a witness if there's criminal charges to be brought out of this thing, and see that that man is prosecuted. Or, do you say, go ahead and search. Not from the testimony of George Foley. The Miami Beach Police said that. What do you do?

> What did he say when they read the warrant to him? He invited us to go ahead and search. Now, that was very generous of Mr. Lebowitz, five policemen there with a search warrant. That was very generous of him to say go ahead and search. Are you satisfied that that's an honest man standing there? Or, is that consistent with the man who knows that he's been had, that he's been caught, that he's trapped with the evidence in his home?

Defense counsel made no objection to this comment.[6] The jury returned a verdict of guilty of possession of stolen property.[7]

■■ It is the prosecutor's cross examination and closing remarks on the defendant's failure to volunteer any information concerning the purse which serves as the basis of the constitutional violation alleged in his petition. We do not find the facts of

---

A. I didn't make any statement to the officers. They did not ask me and I did not respond.

Q. It was after they brought the purse in, it was after that, that they read you the card and placed you under arrest, is that correct?

A. Yes, sir.

T. Tr. 870–73.

**6.** T. Tr. at 1110–11. In fact, defense counsel also commented during closing on the failure of the police to question Mr. Lebowitz as to the location of the purse.

> But, moving along. I questioned Sgt. Ridge. And, I wondered as I listened to Sgt. Ridge's testimony, why they didn't ask him for the purse. And the State, of course, conversely came back and said, why didn't you tell them you had it. But, you must realize, and I imagine in your own home with five or four or whatever it was police officers coming in and reading a form and coming up there like something out of a television movie, that there was not even an opportunity to tell them. Plus, the fact it makes absolutely—absolute sense, if they had said to him, do you have a purse such as we have just described in this search warrant. And if Mr. Lebowitz said to you, no, I don't have such a

purse, that you would be hearing it in this Courtroom.

T. Tr. 1080–81.

**7.** Lebowitz appealed to the Third District Court of Appeal which affirmed his conviction. *Lebowitz v. State*, 313 So.2d 473 (Fla.3d Dist.Ct. App.1975). The Florida Supreme Court denied certiorari. *Lebowitz v. State*, 330 So.2d 19 (Fla.1976). The Florida Supreme Court also denied a petition for writ of habeas corpus. *Lebowitz v. State*, 334 So.2d 606 (Fla.1976). The United States Supreme Court granted certiorari, vacated the judgment and remanded the case for consideration in light of *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). The Third District Court of Appeal again affirmed the conviction. *Lebowitz v. State*, 343 So.2d 666 (Fla.3d Dist.Ct.App.1977). The Florida Supreme Court denied certiorari for the second time. *Lebowitz v. State*, 366 So.2d 882 (Fla.1977). This time the United States Supreme Court denied certiorari. Following the entry of an order committing the defendant to custody, he filed this petition for writ of habeas corpus.

this case support the defendant's theory that a custodial detention took place prior to his arrest. Absent such a finding, we decline to hold the comment in this case violated the defendant's fourteenth amendment right to due process.[8]

The substance of the defendant's claim is that the cross examination and prosecutorial comment on his silence during the execution of the search warrant violated his right to fundamental fairness as mandated by the Due Process Clause of the Fourteenth Amendment. He argues that recent United States Supreme Court decisions should not be read to draw the line on constitutionally permissible comment on the basis of whether *Miranda* warnings were given or the actual arrest has taken place. He proposes that the "governmental action" standard set forth in the Court's most recent opinion is satisfied by the execution of the search warrant which occurred here. We do not agree.

In recent years the United States Supreme Court has provided us with two major opinions regarding the use of a defendant's silence for impeachment purposes. In *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1975), the Court held that use of post-arrest, post-*Miranda* warnings for impeachment was "fundamentally unfair and a deprivation of due process."[9] *Id.* at 618, 96 S.Ct. at 2245. Subsequently, the Court clarified the parameters of *Doyle* in *Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980).

Jenkins had been convicted of manslaughter in Michigan state court. During his trial he testified that he had acted in self-defense. The prosecutor attempted to impeach his credibility by questioning why he had failed to assert this story prior to his surrender to the police.[10] The Court found the facts in *Jenkins* clearly distinguishable from *Doyle*. In *Jenkins* "no governmental action induced petitioner to remain silent before arrest. The failure to speak occurred before the petitioner was taken into custody and given *Miranda* warnings." *Id.* at 240, 100 S.Ct. at 2130. Thus the Court found the fundamental unfairness it had detected in *Doyle* did not exist in *Jenkins*.

Lebowitz contends the facts surrounding his silence fall within a void left by the *Doyle* and *Jenkins* opinions and has provided this Court with a helpful graphic illustration.[11]

---

**8.** The State of Florida suggests that a decision on the merits of this appeal is barred by *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). We disagree. *Wainwright v. Sykes* held that a state court's refusal to reach the merits of a case because of a state contemporaneous objection rule precluded federal habeas corpus relief absent a showing of "cause and prejudice." It did not, however, bar federal habeas corpus relief when the state court addressed the merits of the case. When this occurs, *Wainwright v. Sykes* does not apply and there is no need to show cause and prejudice. "Thus the rule is that 'if the state courts entertained the federal claims on the merits, a federal habeas corpus court must also determine the merits of the applicant's claim.'" *Ratcliff v. Estelle*, 597 F.2d 474, 478 (5th Cir.), *cert. denied*, 444 U.S. 868, 100 S.Ct. 143, 62 L.Ed.2d 93 (1979), quoting *Lefkowitz v. Newsome*, 420 U.S. 283, 292, 95 S.Ct. 886, 891, 43 L.Ed.2d 196 (1975). *See also Sassoon v. Stynchome*, 654 F.2d 371 (5th Cir. 1981); *Clark v. Blackburn*, 632 F.2d 531, 533 n.1 (5th Cir. 1980); *Babers v. Estelle*, 616 F.2d 178, 179 n.1 (5th Cir.), *cert. denied*, 449 U.S. 985, 101 S.Ct. 404, 66 L.Ed.2d 248 (1981); *Braxton v. Estelle*, 641 F.2d 392, 394 (5th Cir. 1981); *Thompson v. Estelle*, 642 F.2d 996, 998 (5th Cir. 1981). As we find the Florida courts addressed the merits of the defendant's claim, we perceive no bar under *Wainwright v. Sykes*.

**9.** *Doyle* involved a conviction in state court for selling marijuana. During the trial, the prosecutor cross examined the defendants as to why they had not told their exculpating story prior to taking the stand at trial. The Court found that once they had been arrested and advised of their right to remain silent, it was impermissible for the prosecutor to use the exercise of their right to remain silent in order to impeach their testimony.

**10.** Jenkins turned himself in to the authorities approximately two weeks after the killing. There had been no governmental contact with Jenkins during this period of time.

**11.** We have taken the liberty to embellish the time line submitted by the petitioner so as to include recent opinions on this issue from other jurisdictions. We commend counsel for this helpful approach.

| Time Line | Alleged Crime | Contact with Police | Arrest | Miranda Warnings |
|---|---|---|---|---|
| | *Jenkins*: Comment on silence at this phase—permitted | *Lebowitz* | | *Doyle*: Comment on silence at this phase—prohibited |
| | | *Bradley v. Jago,* 594 F.2d 1100 (6th Cir.), *cert. denied,* 444 U.S. 847, 100 S.Ct. 94, 62 L.Ed.2d 61 (1979)—comment permitted | *United States ex rel. Smith v. Franzen,* 660 F.2d 237 (7th Cir. 1981)—comment prohibited *Weir v. Fletcher,* 658 F.2d 1126 (6th Cir. 1981)—comment prohibited *People v. Conyers,* 52 N.Y.2d 454, 420 N.E.2d 933, 438 N.Y.S.2d 741 (1981) —comment prohibited | |

The facts in this case do fall somewhere between the post-arrest silence in *Doyle* and the pre-arrest silence in *Jenkins.*

In *Jenkins* the defendant's silence occurred prior to *any* contact with the police. In the present case, Lebowitz was confronted by the police in their execution of a valid search warrant. However, the silence commented upon in this case undisputedly occurred prior to the arrest of the defendant and prior to a reading of his *Miranda* rights. It therefore falls outside the protection set forth in *Doyle.*

We are cognizant of recent opinions from other jurisdictions which have sought to travel this difficult time line and have anchored their decisions along its treacherous course. *See United States ex rel. Smith v. Franzen,* 660 F.2d 237 (7th Cir. 1981); *Weir v. Fletcher,* 658 F.2d 1126 (6th Cir. 1981); *People v. Conyers,* 52 N.Y.2d 454, 420 N.E.2d 933, 438 N.Y.S.2d 741 (1981). In each, the facts surrounding the defendant's silence have varied causing the court's decisions to contain helpful analysis, but no definitive answer to the case before us.[12] Nevertheless, each court has clearly delineated the point of arrest as the line of demarcation where prosecutorial comment and cross examination on the defendant's silence becomes constitutionally impermissible. Due to the variety of circumstances that may occur in the course of an arrest, we refrain from suggesting a universal answer to the question of how much "governmental action" is required before comment becomes impermissible. We are certain, however, that something more than mere confrontation is necessary.

12. *United States ex rel. Smith v. Franzen* involved a comment on the defendant's failure to come forward with his alibi defense after arrest, but prior to trial. On remand from the United States Supreme Court, the Seventh Circuit held that the prosecutor's comments violated the defendant's due process rights. In *Weir v. Fletcher,* the Sixth Circuit divided numerous questions posed by the prosecution into those concerning pre-arrest silence and others involving post-arrest silence. The court found no constitutional impropriety in the questions regarding pre-arrest silence, but did find a violation of due process in the questioning on the defendant's silence after arrest, but prior to *Miranda* warnings. Finally, in *People v. Conyers,* the New York Court of Appeals, on remand from the United States Supreme Court, found the use of the defendant's post-arrest silence lacked sufficient probative value under the New York rules of evidence to be used for impeachment. The court did, however, refrain from deciding the case on state or federal constitutional principles.

The defendant claims that the execution of the search warrant constitutes sufficient "governmental action." He asserts that the three to five minute confrontation with the police amounted to a custodial detention depriving him of his freedom in a significant way. It is with this assertion that we must depart from the defendant's analysis. When all of the testimony is read and taken as a whole, it is apparent that the Lebowitz family was not mandatorily confined.[13] It was not until the moment of arrest that a custodial detention took place. We decline to hold that the facts of this case satisfied the "governmental action" requirement of *Jenkins.*

"A *failure to assert* a fact, when it would have been natural to assert it, amounts in effect to an assertion of the non-existence of the fact." 3A J. Wigmore,

Evidence § 1042, p. 1056 (Chadbourn rev. 1970). It is this general rule under which silence finds its probative value. "Each jurisdiction may formulate its own rule of evidence to determine when prior silence is so inconsistent with present statements that impeachment by reference to such silence is probative." *Jenkins,* 447 U.S. at 239, 100 S.Ct. at 2129. In this case, the Florida courts ruled that the cross examination and comment on Lebowitz's silence during the execution of the search was probative and thus did not constitute a violation of due process. As the Third District Court of Appeal stated:

[W]e think the state's cross-examination was a logical and common sense test of the appellant's credibility and one which the appellant certainly invited by his own testimony on direct examination. In-

---

**13.** Neither police officer indicated that the Lebowitz family had been instructed to confine themselves to the bedroom. Yet, each officer was cross examined on the sequence of events that transpired and any conversations that had taken place during that time. On direct examination, Lebowitz stated: "And they said, 'Y'all go sit in the bedroom and we're going to search this house.'" T. Tr. at 758. During cross examination, the following colloquy occurred:

A. And, I was told to go directly to the bedroom with my family and not leave the room. And, I followed their instructions.
Q. Just a second. Before they told you to go anyplace, they read the search warrant, didn't they?
A. Yes, sir.
Q. You weren't under arrest, were you?
A. No, sir.
Q. They were just standing there reading the warrant to you, explained to you why they were there, isn't that right?
A. They got around me and my family and they read the search warrant, and—
Q. They didn't pull guns out, did they?
A. No.
Q. Didn't pull a gun, didn't put handcuffs on you?
A. No, they did not put handcuffs on me.
Q. They didn't tell you you were under arrest?
A. No. They did tell me to go in the bedroom.
Q. And that was after they read the warrant to you, right?
A. Yes, sir.

T. Tr., at 869–70. On redirect, defense counsel asked: "Then after reading this entire document [search warrant], was it then that they told you and your wife and daughter to go in

the bedroom?" The defendant answered: "Yes, sir." T. Tr. at 902.

This testimony does not indicate that the defendant had been placed in custodial detention. Rather, it appears that the officers suggested the most convenient area for the family to stay while the search was undertaken.

Moreover, even if more fully developed facts might indicate that defendant was placed in custodial detention by virtue of the request that defendant and his family wait in the bedroom, we would nevertheless affirm the district court's denial of habeas relief. The thrust of the questions, and the prosecutor's comment relating to defendant's failure to offer an explanation, clearly refer to that period of time during the reading of the search warrant and immediately thereafter. In other words, the reference is to that period of time before the officer requested defendant and his family to wait in the bedroom. These questions and the prosecutor's comment clearly refer to a period of time that is both before any arrest and before there is any evidence at all of custodial detention. We hold that such questions and comment are proper under *Jenkins.* The few questions which might refer to the period of time after defendant went to the bedroom, assuming arguendo that defendant could show that this amounted to custodial detention, would be merely cumulative of the preceding proper questions, and, under all the facts and circumstances of this case, would be harmless error beyond a reasonable doubt. *United States v. Davis,* 546 F.2d 583 (5th Cir. 1977). *See also United States v. Shavers,* 615 F.2d 266 (5th Cir. 1980), and *Weir v. Fletcher,* 658 F.2d 1126 (6th Cir. 1981).

deed, we think that to have denied the state the right to point out the appellant's previous silence, in light of his elaborate version at trial ... would have been unfair to the state.

*Lebowitz v. State*, 313 So.2d 473, 477, *cert. denied*, 330 So.2d 19 (Fla.1976). In view of the state court's determination, we find no constitutional violation of the defendant's due process rights. "The fact that the defendant did not offer the exculpatory explanation when he had an earlier opportunity to do so is evidence which the jury is entitled to hear, and from which it may draw reasonable inferences." *Bradley v. Jago*, 594 F.2d 1103 (6th Cir.), *cert. denied*, 444 U.S. 847, 100 S.Ct. 94, 62 L.Ed.2d 61 (1979). The District Court's denial of the defendant's petition for writ of habeas corpus is AFFIRMED.

CLARK, Circuit Judge, specially concurring:

I concur in the result, but would not decide the case on the Fifth Amendment Constitutional issue. The conviction is logically affirmed on the "invited error" or waiver rule. No objection to the prosecutor's argument was asserted by the defense. The defense broached the issue of silence by cross-examining the police about why defendant was not asked where the purse was located. Then counsel argued to the jury that the police should have inquired into the location of the purse. (See text accompanying notes 2–6, majority opinion.) However, the majority holds that a person in his own home is not in custodial detention while the police search the house pursuant to a search warrant. This is completely unnecessary in reaching a decision in this case.