HARRIS, Chief Judge.
The issue on appeal concerns whether the trial court erred in granting the defendant’s motion for new trial. We reverse.
The State charged Mark Adam Thorpe with burglary of a dwelling, grand theft, and dealing in stolen property. The two victims testified that on November 4, 1993, they discovered several items missing from their apartment, including a mierocassette recorder, a VCR, an Elgin watch, and a Gameboy. After reporting the theft, the two victims and Detective Nelson went to Eu Gallie Pawn Shop where the items listed above were identified and recovered. The shop manager testified that when the shop buys merchandise, the employee obtains identification from the seller, including a fingerprint of the seller’s right thumb. The employee who actually purchased the stolen items testified that he did so on November 5, 1993 (the day after the burglary) and that he bought the items from the defendant, Thorpe, who lives in the same apartment complex as the victims. Officer Morisette of the Melbourne Police Department, a qualified fingerprint expert, confirmed that Thorpe’s thumbprint matched the thumbprint on the pawn shop’s records. The State rested.
The defense presented the testimony of Karen Matthews, Thorpe’s girlfriend. She testified that on the night of the burglary, one of the couple’s friends, a Dennis Holcomb, came over to their apartment on a bicycle with the VCR, tape recorder and watch and asked if they would take him to a pawn shop. Matthews went on to state that the shop was closed so Holcomb asked them to lend him $30, which they did and Holcomb left the items at their apartment. In explaining where the items came from, Matthews testified that Holcomb told her that his parents had given him the items “for a place he was fixing to get.”
Regarding the $30 loan, Matthews first testified that Dennis repaid the money the next day, and Thorpe brought the cash to her at her office. Upon further questioning, however, she admitted that she did not really know that Thorpe had received the money from Holcomb because she was not present when this exchange allegedly occurred. She was relying on what Thorpe told her — that he looked for Holcomb the next day but was unable to locate him so he took the items to the pawn shop himself.
*394 The prosecutor then asked Matthews if she had ever told any police officer the story about Holcomb riding up on his bicycle with a VCR, a watch, and a recorder and asking for a ride to a pawn shop. Matthews responded no, because no one ever asked her and because she was pregnant and “didn’t want to hear it.” She later conceded that she had been questioned by the police on two separate occasions regarding the events of the night in question. She further admitted that, on March 29,1994, she refused to speak with Detective Nelson regarding the case because she had gone through a miscarriage on February 8, 1994 and was “stressed out” from that experience. When pressed further, Matthews admitted that she refused to speak to the detective on the advice of Thorpe’s lawyers and that she was not anxious to tell the story about Holcomb to anyone because she “wanted to get this thing over with.” The prosecution then pointed out to Matthews that telling the story regarding Holcomb to Detective Nelson on March 29, 1994 might have “gotten the thing over with.”
Holcomb testified that he never owned any of the items that were stolen, that he never gave any of these items to Thorpe, and that he never asked Thorpe to pawn the items for him. He admitted that he has pawned items before, about three times a year, but stated that he has never asked anyone to pawn items for him. He acknowledged that he knew Thorpe through a friend of his who is now in jail and that he had been to Thorpe’s apartment on two prior occasions.
Thorpe took the stand and told essentially the same story regarding the events of the night of the burglary as his girlfriend Matthews had. He stated that he tried to find Holcomb the next day and pawned the items himself when he could not locate him. He then gave $30 to Matthews and gave the rest of the money to Holcomb that evening.
On cross-examination, the following occurred:
Q. Did you ever call Karen Matthews and tell her: Start spreading the alarm and spread the word—
[DEFENSE COUNSEL]: Judge, this is hearsay and it’s an undisclosed statement and I object.
[THE STATE]: I’m asking him—
THE COURT: Have you finished the question yet?
[THE STATE]: No, sir.
THE COURT: Let him finish the question and then I’ll rule on your objection.
Q. When did you say to Karen Matthews: Go tell the whole world I got the stuff from Dennis Holcomb?
A. I never told her that.
[DEFENSE COUNSEL]: Objection, hearsay, undisclosed statement, and I would move for a mistrial on the basis of trying to introduce an undisclosed statement.
THE COURT: Objection sustained. Motion denied. The jury will disregard the last question and answer by the witness.
The jury found Thorpe not guilty of burglary of a dwelling and guilty of petit theft and dealing in stolen property. Thorpe filed a motion for new trial, contending that the prosecutor’s question was an improper comment on the defendant’s right to remain silent, an objection not raised at trial. The court granted the motion based on the following:
In this case, the prosecutor asked the Defendant “So when did you tell Karen Matthews to start spreading the alarm that Dennis Holcomb in fact committed the burglary and theft?” The question (it is better termed a statement) contains a statement not in evidence asserting that the Defendant told Karen Matthews to tell [that] Holcomb committed the crimes and not him. The way it was asked and the context of the comment can only be interpreted in the context of this trial and amounts to a statement to the jury by innuendo of “why did not you or Karen tell your story before today if you are innocent?” The prosecutor knew prior to asking the question that the story was not told to anyone in law enforcement and it amounts to telling the jury that he did not tell anyone his story prior to trial. It was a comment on Defendant’s right to remain *395 silent to attack his credibility. The Third District in Lebowitz v. State, 313 So.2d 473 (3rd DCA 1975); Reaser v. State, 356 So.2d 891 (Fla. 3rd DCA 1975 [1978]) and other cases have held that when a Defendant takes the stand to testify, he becomes a witness like any other and invites full inquiry into any matters which might tend to impeach his testimony. This is the case if he had told inconsistent stories or facts in prior testimony. However, that is not the ease at bar.
We disagree with the trial court’s analysis that the questions asked amounted to a comment on the defendant’s right to remain silent.
When a defendant takes the stand to testify, he becomes a witness like any other and invites full inquiry into any matters which might tend to impeach his testimony. See Reaser v. State, 356 So.2d 891 (Fla. 3d DCA), cert. denied, 366 So.2d 884 (Fla.1978). In this case, Thorpe’s explanation was suspect and the State had every right to attack it by suggesting that Thorpe had fabricated the story and then told his girlfriend to back him up by telling the same story. This was nothing more than an attack on Thorpe’s credibility, an attack he invited when he took the stand. Therefore, the trial court erred in concluding that the question was an improper comment on Thorpe’s right to remain silent, and the order granting Thorpe’s motion for new trial is reversed.
REVERSED and REMANDED for further proceedings consistent with this opinion.
GRIFFIN and THOMPSON, JJ., concur.